PEOPLE v WILSON

Docket No. 232495. Submitted May 7, 2003, at Detroit. Decided July 1, 2003, at 9:00 A.M. Leave to appeal sought.

Donald L. Wilson was convicted by a jury in the Oakland Circuit Court, Fred M. Mester, J., of several charges, including two counts of receiving or concealing stolen property, MCL 750.535(3)(a), and two counts of altering a vehicle identification number (VIN) with the intent to mislead someone regarding the identity of the vehicle, MCL 750.415(2). The charges arose after an investigation of an automobile dealership allegedly involved in a crime ring that stole automobiles and automotive parts led to the discovery of two vehicles in the defendant's possession that had been obtained from the dealership and rebuilt with stolen parts. The defendant appealed, arguing that the trial court erred in denying his motion to quash one of the charges of receiving or concealing stolen property and both of the charges of altering a VIN, and motion to suppress evidence of the vehicles and the stolen parts. The defendant also argued that he was denied the effective assistance of counsel.

The Court of Appeals held:

1. The trial court properly denied the defendant's motion to quash the charge of receiving or concealing stolen property that related to the 1998 Jeep parts because there was evidence that the defendant knew the stolen parts were installed in his 1997 Jeep. The defendant bought the Jeep as a salvage vehicle, knowing that it was missing numerous parts. Furthermore, the defendant never acquired normal title and registration, and continued to drive the Jeep using a dealer plate. This evidence established probable cause to support the charge.

2. There was probable cause to bind the defendant over under the felony provisions of MCL 750.415(2) for altering VINs with the intent to mislead someone regarding the identity of a vehicle. First, under subsection 415(2), the prosecution need not present evidence that the defendant intended to mislead someone regarding the identity of a vehicle, only that the defendant possessed the contraband. Second, although subsection 415(2) creates a loophole where the accused removes or defaces the identification number on a part of a motor vehicle or mechanical device, when this sub-

section is interpreted along with subsection 415(3), it appears clear that the statute comprehensively proscribes any and all methods of misrepresenting identification numbers on the motor vehicle itself or any constituent part. Thus, rebuilding a stripped vehicle with stolen replacement parts that have missing or defaced identification numbers is an installation of improper parts meant to mislead someone into believing that an automobile is a legitimate vehicle with legitimate parts, and is within subsection 415(2), and the defendant's possession of the bumpers, hood, fenders, and airbag with removed or altered identification numbers constituted a violation of the statute. Finally, evidence that an insurer paid for replacement parts or repairs to the 1998 Jeep did not constitute evidence that the identification numbers on the stolen parts were legitimately removed. The trial court did not err in denying the defendant's motion to quash the charges.

3. The defendant's argument, that the search warrant for tax records that authorized the officers' presence in his home was a pretext to gain entry and examine the vehicles, is without merit, and the trial court properly denied the defendant's motion to suppress evidence of the vehicles and the stolen parts. Pursuant to recent federal precedent, once a valid search warrant is issued and the officers confine their search to areas related to the warrant, the subjective intent of the officers regarding what they actually suspect, or hope to find, is irrelevant and plays no role in an ordinary, probable-cause Fourth Amendment analysis.

4. The officers did not exceed the scope of the search warrant when they searched for hidden VINs by lifting the hoods or looking under the seats of the defendant's vehicles. Although the trial court erred when it relied on a purported exemption for all VINs, public or hidden, the Court of Appeals will not reverse where the right result was reached albeit for the wrong reason. Here, the search for the hidden VINs was permissible under the automobile exception, which allows for searches without warrants of vehicles where there is probable cause to believe that the vehicle contains contraband. An officer at the scene was familiar with the history of the defendant's vehicles and his relationship with the suspect dealership. Under these facts, there was probable cause to believe that there were stolen parts in the vehicles, and the search was proper. Furthermore, the search of the vehicles was proper under the plain-view doctrine because the officer was lawfully in the garage pursuant to the tax-records warrant, and the vehicles, with which the officer was familiar, were within plain view. Thus, the officer did not violate the defendant's Fourth Amendment right against

unreasonable searches and seizures, and the trial properly denied the motion to suppress.

5. The defendant argued that he was denied the effective assistance of counsel when his trial counsel failed to challenge the search warrant. To prevail on this claim, the defendant must demonstrate that the tax-records warrant should not have been issued. However, the defendant did not contend that any of the allegations in the affidavit were fabricated, or that they failed to establish probable cause. Furthermore, there was evidence that the defendant had not filed a state income-tax return since 1992, despite having a substantial income. Because the defendant failed to establish evidence that there was insufficient evidence to establish probable cause for the warrant, he cannot establish that trial counsel's performance was deficient.

Affirmed.

1. CRIMINAL LAW — ALTERING VEHICLE IDENTIFICATION NUMBERS.

The statute prohibiting the altering of a vehicle identification number with the intent to mislead another regarding the identity of a vehicle proscribes any and all methods of misrepresenting identification numbers on the motor vehicle itself or any constituent part; thus, rebuilding a stripped vehicle with stolen replacement parts that have missing or defaced identification numbers is an installation of improper parts meant to mislead someone into believing that an automobile is a legitimate vehicle with legitimate parts, and is conduct prohibited by the statute (MCL 750.415[2]; MCL 750.415[3]).

2. SEARCHES AND SEIZURES — SEARCH WARRANTS — SUBJECTIVE INTENT.

Once a valid search warrant is issued and the search is confined to areas related to the warrant, the subjective intent of the officers requesting the warrant with regard to what evidence may or may not be found is irrelevant and plays no role in an ordinary, probable-cause Fourth Amendment analysis (US Const, Am IV; Const 1963, art 1, § 11).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, and *David C. Cannon*, Assistant Attorney General, for the people.

*Suzanna Kostovski* for the defendant.

Before: MARKEY, P.J., and CAVANAGH and HOEKSTRA, JJ.

HOEKSTRA, J. Defendant Donald L. Wilson appeals as of right his jury-trial convictions of two counts of receiving or concealing stolen property, MCL 750.535(3)(a), two counts of altering a vehicle identification number (VIN) with the intent to mislead another regarding the identity of the vehicle, MCL 750.415(2), and one count each of obtaining money by false pretenses, MCL 750.218, and insurance fraud, MCL 500.4511(1). The trial court later vacated the insurance-fraud conviction, which was charged as an alternative to the false-pretenses charge, and sentenced defendant to two years' probation, with the first nine months to be served in the county jail. Subsequently, the trial court reduced defendant's sentence to ninety days in jail with the remainder of the sentence to be spent on a tether. Defendant was required to pay $78,621 in restitution. We affirm.

I. BASIC FACTS

This case arose as a result of the Western Wayne Automobile Theft Unit's investigation of the involvement of Miami Motors, an automobile dealership, in a crime ring that stole automobiles and automotive parts. During the course of the investigation, officers from this unit discovered that defendant possessed two vehicles, a red 1994 Mercedes 600 SL, and a gray 1997 Jeep Grand Cherokee, both of which contained numerous replacement parts taken from stolen vehicles, specifically, a white 1995 Mercedes 500 SL, and a blue 1998 Jeep Grand Cherokee. The 1994 Mercedes and the 1997 Jeep also contained parts that were

missing their identification labels. Defendant had financial and business dealings with Miami Motors and, according to a police officer, had represented himself as an agent of Miami Motors.

## II. ANALYSIS

### A. THE MOTION TO QUASH

On appeal, defendant first asserts that the trial court erred in denying his motion to quash one of the charges of receiving or concealing stolen property and both charges of altering a VIN. We disagree.

We review de novo a circuit court's decision to grant or deny a motion to quash charges to determine if the district court abused its discretion in binding over the defendant for trial. *People v Libbett*, 251 Mich App 353, 357; 650 NW2d 407 (2002). A district court must bind a defendant over for trial when the prosecutor presents competent evidence constituting probable cause to believe that a felony was committed and that the defendant committed that felony. MCL 766.13; MCR 6.110(E); *People v Northey*, 231 Mich App 568, 574; 591 NW2d 227 (1998). "Probable cause requires a quantum of evidence 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief' of the accused's guilt." *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003), quoting *People v Justice (After Remand)*, 454 Mich 334, 344; 562 NW2d 652 (1997). To bind a defendant over, the magistrate must find that there is evidence regarding each element of the crime charged or evidence from which the elements may be inferred. *People v Hudson*, 241 Mich App 268, 278; 615 NW2d 784 (2000).

1. RECEIVING OR CONCEALING STOLEN PROPERTY

With respect to the charge of receiving or concealing stolen property involving the 1998 Jeep parts, defendant argues that this count should have been quashed because the evidence did not establish that he knew that the parts taken from the 1998 Jeep and installed in the 1997 Jeep were stolen, embezzled, or converted. Defendant asserts that there was no evidence regarding the whereabouts of the 1997 Jeep between August 11, 1998 (the day Elite Motors bought it at auction and Miami Motors bought it from Elite Motors), and December 8, 1998 (the day the defendant was seen driving it during Automobile Theft Unit surveillance), or the whereabouts of the 1998 Jeep between September 29, 1998, the day it was stolen, and October 5, 1998, the day it was recovered. Consequently, there was no evidence regarding how the parts from the 1998 Jeep came to be installed in the 1997 Jeep, or that defendant knew the replacement parts were stolen.

MCL 750.535(1) provides that "[a] person shall not buy, receive, possess, conceal, or aid in the concealment of stolen, embezzled, or converted money, goods, or property knowing the money, goods, or property is stolen, embezzled, or converted." Defendant was convicted under MCL 750.535(3)(a), receiving or concealing stolen property with a value of $1,000 or more but less than $20,000. The elements of this offense are: "(1) the property was stolen; (2) the value of the property met the statutory requirement; (3) defendant received, possessed, or concealed the property with knowledge that the property was stolen; (4) the identity of the property as being that pre-

viously stolen; and (5) the guilty actual or constructive knowledge of the defendant that the property received or concealed was stolen." *People v Pratt,* 254 Mich App 425, 427; 656 NW2d 866 (2002).

Despite the lack of evidence tracing the whereabouts of the 1998 Jeep parts between the theft of the 1998 Jeep and their appearance on defendant's 1997 Jeep, there was sufficient evidence for the district court to find probable cause to bind over defendant on the charge of receiving or concealing. Defendant bought the 1997 Jeep as a salvage vehicle, knowing that it was missing numerous essential parts; he therefore knew it was rebuilt with replacement parts. Defendant owned another car, the 1994 Mercedes, that came from Miami Motors and had been rebuilt with parts from another Mercedes that defendant, himself, had once owned and reported as stolen, but which later ended up at Miami Motors. Further, defendant never went through proper channels to acquire normal title and registration for the 1997 Jeep, presumably because the stolen parts would be discovered during the inspection and recertification process. Instead, he kept the vehicle under the insurance salvage title and drove it with a dealer plate, although this practice violated subsection 217c(7) of the Michigan Vehicle Code, MCL 257.217c(7), now subsection 217c(6), MCL 257.217c(6). Because this evidence established probable cause that defendant knew his 1997 Jeep contained stolen parts, the district court did not abuse its discretion in binding over defendant, and the trial court did not err in denying defendant's motion to quash. *Libbett, supra.*

2. ALTERING A VIN

With respect to the two counts of altering a VIN, defendant argues that the evidence at the preliminary examination did not establish probable cause to bind him over under the felony provision of this statute, MCL 750.415(2), and thus the trial court should have quashed these counts because the magistrate abused its discretion in binding defendant over on these counts. According to defendant, at most, there was probable cause that he violated the misdemeanor provision of this statute, MCL 750.415(1). In a three-part argument, defendant asserts that the evidence did not establish probable cause for a felony violation because there was no evidence that he intended to mislead anyone regarding the identity of the vehicle, since the statute prohibits misidentification of vehicles, not parts, and because the evidence established that there was a legitimate reason why the labels for the parts were missing.

Defendant's assertion that the prosecution must present evidence that he intended to mislead someone regarding the identity of the vehicle contradicts our Supreme Court's decision in *People v Venticinque*, 459 Mich 90; 586 NW2d 732 (1998). In *Venticinque*, our Supreme Court stated that a plain reading of MCL 750.415 "illustrates that possession of the contraband is prima facie evidence of a violation of either subsection 415(1) or 415(2)," *id.* at 99, and thus held "that possession of the contraband is a prima facie showing of either the felony or the misdemeanor offense," *id.* at 102. The Court further commented that selection of a felony or misdemeanor charge is a matter of prosecutorial discretion. *Id.* at

100-101. In light of *Venticinque, supra,* defendant's argument that the trial court should have quashed the two counts regarding altering a VIN on grounds of insufficient evidence of intent to mislead is without merit.

Next, defendant argues that the fenders, bumpers, and hood from the 1998 Jeep, and an air bag from the 1995 Mercedes, do not constitute vehicles and that his possession of the parts cannot constitute prima facie evidence of a misidentification of a vehicle. This issue raises a question of statutory construction, which is reviewed de novo. *People v Callon,* 256 Mich App 312, 315; 662 NW2d 501 (2003).

"The fundamental rule of statutory construction is to discern and give effect to the intent of the Legislature." *Venticinque, supra* at 99. If the statute's language is clear and unambiguous, this Court must enforce the language as written. *Id.* at 99-100. "Unless defined in the statute, every word or phrase of the statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *People v McDaniel,* 256 Mich App 165, 172; 662 NW2d 101 (2003). Recently, in *Houghton Lake Area Tourism & Convention Bureau v Wood,* 255 Mich App 127; 662 NW2d 758 (2003), this Court explained:

> This Court must not determine whether there is a "more proper way" the Legislature should have chosen, but rather we must determine what the Legislature actually intended. This Court must not consider the wisdom of the Legislature's decisions regarding statutory provisions. Further, this Court should generally not speculate about the Legislature's intent beyond the words actually used in the statute. Specifically, this Court should assume that an omission was intentional. However, judicial construction is appropriate when

> reasonable persons could interpret a statute differently. This Court must determine the reasonable construction that best effects the Legislature's intent. [*Id.* at 134-135 (citations omitted).]

Further, "application of the absurd result rule is appropriate only when attempting to determine the Legislature's intent regarding an ambiguous statute; it cannot defeat a statute's clear meaning." *Id.* at 143.

Here, the subsection in question, MCL 750.415(2), states:

> A person who, with the intent to mislead another as to the identity of a vehicle, conceals or misrepresents the identity of a motor vehicle or of a mechanical device by removing or defacing the manufacturer's serial number or the engine or motor number on the motor vehicle, or by replacing a part of the motor vehicle or mechanical device bearing the serial number or engine or motor number of the vehicle with a new part upon which the proper serial number or engine or motor number has not been stamped, is guilty of a felony, and if the person is a licensed dealer, the dealer's license shall be revoked.

The phrase "conceals or misrepresents the identity of a motor vehicle or of a mechanical device" states the primary offense prohibited by the statute. Notably, this phrase proscribes misrepresentation of the identity of mechanical devices as well as entire vehicles. However, the following phrases set forth the two specific acts that constitute violations. The first act, "removing or defacing the manufacturer's serial number or the engine or motor number *on the motor vehicle*" (emphasis supplied), clearly does not apply to the removal or defacement of the identification number on a *part* of the motor vehicle, other than the engine. The second act, "replacing a *part* of the motor

vehicle or mechanical device bearing the serial number or engine or motor number of the vehicle with a *new part,* upon which the proper serial number or engine or motor number *has not been stamped"* (emphasis supplied), also does not apply here. The prosecutor did not show that the air bag, bumpers, hood, or fenders were not stamped with the proper number, but rather that the labels were missing from the bumpers, hood, and fenders, and that the label was partly scraped-off the air bag. Moreover, the statute specifically refers to parts "on which the proper number *has not* been stamped," as opposed to parts on which the proper number *is not* stamped. This use of the past tense limits the statute's application to parts that were not stamped with the correct number, and excludes parts that were originally stamped with the correct number, but do not currently bear the stamp. Thus, strictly construed, subsection 415(2) leaves a loophole where the accused removes or defaces the identification number on a part of a motor vehicle or mechanical device. Further, there is no apparent ambiguity in this subsection.

However, our analysis does not end here because when subsection 415(2) is read in conjunction with subsection 415(3), the description of what constitutes an offense in subsection 415(2) becomes ambiguous. Subsection 415(3) provides:

> In all prosecutions under this section, possession by a person of a motor vehicle or of a mechanical device with the manufacturer's serial number or the engine or motor number removed, defaced, destroyed or altered or with a part bearing the number or numbers replaced by one on which the proper number does not appear, shall be prima facie evidence of violation of this section.

Under this subsection, the inclusive phrase "removed, defaced, destroyed or altered" applies to the identification number on *both* motor vehicles *and* mechanical devices. It does not assign different classifications to motor vehicles and parts, or to defaced or removed numbers and numbers that were never stamped. Furthermore, the phrase "with a part bearing the number or numbers replaced by one on which the proper number does not appear" also refers to both motor vehicles and mechanical devices. Finally, the phrase "on which the proper number does not appear" makes no distinction on the basis of whether the absent number was removed, altered, defaced, or never imprinted. Thus, subsection 415(3) comprehensively proscribes any and all methods of misrepresenting identification numbers on the motor vehicle itself or any constituent part.

Technically, subsection 415(3) does not define the offense, but rather provides what circumstances constitute prima facie evidence of a violation. However, these circumstances are broader than the strictly defined offense in subsection 415(2), and this discrepancy creates an ambiguity. Therefore, it is permissible to interpret the statute to determine a reasonable construction that best effects legislative intent, and to avoid an unjust and absurd result. *Houghton Lake, supra* at 134-135, 142-143.

We believe that legislative intent would best be fulfilled by interpreting subsection 415(3) as a clarification of the definition of the offense. Subsection 415(3) sets forth a comprehensive set of circumstances that constitute a violation under the statute. It closes the seemingly absurd and unjust loophole left by subsection 415(2). Further, this interpretation advances the

ostensible objective of MCL 750.415. In *Venticinque,
supra,* the Supreme Court, interpreting the phrase
"identity of the vehicle," as used in subsections 415(1)
and (2), held that the phrase could refer to either the
vehicle from which the parts were stolen, or the vehi-
cle in which they were installed. *Id.* at 102. The
Court's discussion of the policy underlying this con-
clusion clearly supports our interpretation of subsec-
tion 415(3) as a clarified definition of the offense:

> To read the statute otherwise would mean that there is
> no penalty for replacing proper parts with improper parts
> as long as the appearance of the vehicle remains the same.
> If such a view were adopted, then the evident legislative
> purpose to deter "chop shop" operations would be under-
> mined because the felony offense could be made out only if
> so many parts were replaced that the vehicle in question
> was no longer recognizable. Further, it would impermissibly
> read out of the statute the language penalizing as a felony
> "replacing a part of the motor vehicle or mechanical
> device."
>
> The identity of the vehicle is thus the sum of its parts,
> not just its serial number or its appearance. In short, the
> defendant may have intended to mislead another regarding
> the identity of the vehicle in question or the identity of the
> vehicle from which the part was taken. The statute prohib-
> its the installation of improper parts that lead a third party
> to believe that a legitimate vehicle with legitimate parts is
> being delivered, which is exactly what occurred here. [*Ven-
> ticinque, supra* at 102-103.]

Rebuilding a stripped car with stolen replacement
parts that have missing or defaced identification num-
bers is obviously an "installation of improper parts"
meant to mislead someone into believing that an
automobile is "a legitimate vehicle with legitimate
parts," and is the sort of conduct that the Legislature

meant to penalize when it enacted the statute.[1] Consequently, possession of an air bag, bumpers, hood, and fenders with removed or altered identification labels does constitute a violation of MCL 750.415.[2] Accordingly, the trial court properly denied defendant's motion to quash the two counts of altering a VIN with the intent to mislead others.

Defendant also asserts that repairs performed on the 1998 Jeep after a March 1998 accident provided a legitimate reason for the absence of labels on the hood, fenders, and bumper. Although there was evidence that the insurer paid for replacement of, or repairs to, the bumper, grill, hood, and fenders on the 1998 Jeep in March 1998, there was no evidence that this work caused the labels to be removed. This evidence did not defeat probable cause.

### B. THE MOTION TO SUPPRESS EVIDENCE

Next, defendant argues that the trial court should have suppressed evidence, including the vehicles and the vehicle parts, as the fruit of an unconstitutional search. Defendant contends that the search warrant for financial and tax records that authorized the officers' presence in his home was a ruse to gain

---

[1] Before the 1978 amendment of MCL 750.415, the text that is now subsection 415(3) was not a separate subsection, but the second paragraph following the paragraph that defined the offense. This composition further supports our conclusion that subsection 415(3) can and should be read as an extension and clarification of the definition of the offense. *Venticinque, supra* at 98-99 and n 3.

[2] We note that our analysis applies to both subsections 415(1) and (2) because the only distinction between these provisions is the qualifying phrase in the latter subsection, "with the intent to mislead another as to the identity of a vehicle," which, as discussed above, elevates the offense from a misdemeanor to a felony.

entry and examine the vehicles, and that the officers' examination of the VINs of various parts of the vehicles in the garage exceeded the scope of the warrant, and that the plain-view exception is inapplicable.

We review a trial court's findings of fact in a suppression hearing for clear error; however, we review de novo a trial court's ultimate decision on a motion to suppress. *People v Beuschlein*, 245 Mich App 744, 748; 630 NW2d 921 (2001); *People v Garvin*, 235 Mich App 90, 96; 597 NW2d 194 (1999). The application of the exclusionary rule to an alleged Fourth Amendment violation is a question of law that is reviewed de novo on appeal. *People v Custer*, 465 Mich 319, 326 (MARKMAN, J.), 345 (WEAVER, J.); 630 NW2d 870 (2001).

The federal and Michigan constitutions protect persons from unreasonable searches and seizures. *People v Champion*, 452 Mich 92, 97; 549 NW2d 849 (1996); US Const, Am IV; Const 1963, art 1, § 11. Generally, a search without a warrant or a seizure without a warrant is unreasonable per se, "subject to several specifically established and well-delineated exceptions." *Id.* at 98; *People v Gonzalez*, 256 Mich App 212, 232; 663 NW2d 499 (2003). Evidence seized pursuant to an unconstitutional search must be excluded from trial unless an exception to the exclusionary rule is applicable. *People v Stevens (After Remand)*, 460 Mich 626, 634, 636; 597 NW2d 53 (1999).

## 1. SEARCH WARRANT AS PRETEXT

In support of his argument that evidence of the vehicles and vehicle parts should have been suppressed because the search warrant for tax records was a ruse to gain entry into defendant's home to

examine the vehicles, defendant relies on *United States v Sanchez*, 509 F2d 886 (CA 6, 1975). Defendant suggests that suppression of the challenged evidence was required because the officers were not authorized to search the vehicles. However, more recent authorities have reached decisions contrary to *Sanchez*. Indeed, in light of two decisions by the United States Supreme Court, *Horton v California*, 496 US 128; 110 S Ct 2301; 110 L Ed 2d 112 (1990), and *Whren v United States*, 517 US 806; 116 S Ct 1769; 135 L Ed 2d 89 (1996), we believe that *Sanchez* is no longer reliable authority to the extent that it excluded evidence seized pursuant to a search where the warrant authorizing the search was unrelated to that evidence, and the officers conducting the search subjectively expected or intended to find that evidence when they executed the warrant.

In *Horton, supra*, the Supreme Court considered and rejected the argument that an officer is precluded from seizing and searching for items not listed in the search warrant if the officer had an expectation of finding it in the course of the search. *Id.* at 139-140. The Court stated that "evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Id.* at 138. The Court further stated:

> The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement. If the officer has knowledge approaching certainty that the item will be found, we see no reason why he or she would deliberately omit a particular description of the item to be seized from

> the application for a search warrant. Specification of the additional item could only permit the officer to expand the scope of the search. On the other hand, if he or she has a valid warrant to search for one item and merely a suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first. [*Id.* at 138-139.]

The Court also stated that the inadvertence requirement was not necessary to prevent the police "from conducting general searches, or from converting specific warrants into general warrants," because this interest "is already served by the requirements that no warrant issue unless it particularly describ[es] the place to be searched and the persons or things to be seized." *Id.* at 139 (citation and internal quotes omitted). The Court remarked that the particularity requirements in warrants served the interest of limiting the scope and duration of a search, and that an inadvertence requirement would not serve any additional Fourth Amendment interest. *Id.* at 140.

In *United States v Ewain*, 88 F3d 689 (CA 9, 1996), the United States Court of Appeals for the Ninth Circuit applied the *Horton* decision in circumstances analogous to the search in the instant case. In *Ewain*, the defendant's roommate informed a postal inspector that the defendant was counterfeiting mailbox keys and trading them for methamphetamine. *Id.* at 691. The postal inspector informed a state narcotics detective, who arranged a controlled buy and then obtained a search warrant for evidence of drug dealing. The postal inspector did not believe he had sufficient probable cause to obtain a search warrant for mail theft, but the narcotics officer asked him to join the search because he was skilled at detecting evi-

dence of postal crimes. *Id.* at 691, 694. The officers found at least two plastic bags that appeared to contain methamphetamine, and a "cornucopia of postal theft evidence," including a special mailbox key. *Id.* at 691. The defendant's motion to suppress the evidence of postal theft was denied, and he was convicted. *Id.* at 692.

The defendant argued on appeal that the postal-theft evidence was illegally seized because the warrant authorized only a drug-related search. He contended that the warrant was a pretext because the narcotics officer brought the postal officer to help detect evidence that the narcotics officer would not have recognized as relevant to postal crimes. *Id.* The Ninth Circuit rejected the argument that the warrant was a pretext because the district court found that the police really were looking for drug-related evidence. *Id.* However, the court stated that this was not determinative. *Id.* at 692, 694. The Ninth Circuit reviewed *Horton, supra,* and other precedents, and stated that if a police officer has a valid warrant for an item, and fully expects to find another item, the officer's suspicion or expectation does not defeat the lawfulness of the seizure. *Id.* at 693, citing *Horton, supra* at 138-139. The Ninth Circuit stated that the officers in *Ewain* looked only in places where they could reasonably expect to find methamphetamine evidence, which was proper under the warrant, and that under these circumstances the officers did not violate the defendant's constitutional rights. *Id.* at 694.

The Ninth Circuit continued its analysis by considering the significance of the fact that the narcotics officer brought a postal officer to the search for his

expertise in spotting evidence of postal theft. *Id.* The Ninth Circuit stated that the relevant inquiry was not the officers' subjective good faith or ulterior motives, but whether they exceeded the scope of the search warrant. *Id.* The Ninth Circuit noted that factors such as subjective motivations and inviting along another officer from another area of investigation could be evidence that the officers went beyond the scope permitted by the warrant. However, the crucial question was still whether the officers confined their search to areas relevant to the warrant. *Id.* at 694-695. The Ninth Circuit concluded that the district court properly denied the defendant's motion to suppress because the search was within the scope authorized by the warrant. *Id.* at 695.

*Horton* and *Ewain* significantly erode any relevance that an officer's subjective intent or expectations might have with regard to seizures of evidence in plain view and discovered during the execution of an unrelated search warrant. The United States Supreme Court further eroded the significance of an officer's subjective intent in *Whren, supra.*

In *Whren,* the defendant moved to suppress evidence on the grounds that the police did not have probable cause to stop his car to look for drugs and that the officer's explanation that he stopped the car for a traffic violation was a pretext. *Id.* at 809. The federal district court denied the motion, and the federal appeals court affirmed. *Id.* On appeal, the Supreme Court, like the lower courts, rejected the argument that the officer's supposed pretext for stopping the vehicle invalidated the search:

> Not only have we never held, outside the context of inventory search or administrative inspection . . . that an

officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary. [*Id.* at 812.]

The Supreme Court then reviewed a line of cases holding that an objectively legal search remains legal, notwithstanding the officers' subjective ulterior motives. *Id.* at 812-813. The Court stated that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813.

In *United States v Van Dreel*, 155 F3d 902 (CA 7, 1998), the United States Court of Appeals for the Seventh Circuit found *Whren* applicable in circumstances comparable to the instant case. In *Van Dreel*, while investigating the defendant for drug violations, the police conducted two authorized searches of his property, but found little evidence of drugs. However, they did find evidence of possible hunting violations and decided to use that evidence to obtain another search warrant. *Id.* at 903. Officers of the state Department of Natural Resources obtained the new warrant, which authorized a search for evidence of deer-poaching violations, including carcasses, documentation of meat sales, weapons, ammunition, and other relevant items. *Id.* at 903-904. An officer from a drug task force joined the search, hoping to find evidence of drug dealing. *Id.* at 904. While executing the search, the officer from the drug task force pushed forward the seat of a junked pickup truck and found plastic wrap stained with a suspicious red grease, which tied the defendant to another suspected drug trafficker, who had a car with a secret compartment containing the same red grease. *Id.* The defendant unsuccessfully moved to suppress the plastic wrap on the ground that the hunting-violation warrant was a

pretext to search for drug evidence, and that the officer exceeded the scope of the warrant by searching under the truck seat. The trial court denied the motion, and the defendant was convicted of three counts of drug violations. *Id.*

On appeal, the Seventh Circuit, applying the rationale in *Whren, supra,* concluded that the subjective intentions of the officer from the drug task force "played no role in the probable cause analysis in this case." *Van Dreel, supra* at 905. The Seventh Circuit stated that once a valid warrant has been issued, the officer's subjective intent in conducting the search is irrelevant. *Id.* The Seventh Circuit noted that the defendant did not challenge the validity of the hunting-violations warrant, and concluded that this constituted a tacit admission that the police had probable cause to believe they would find evidence of hunting violations on the premises. *Id.* The Seventh Circuit also determined that the officer did not exceed the limits of the warrant when he looked under the truck seat, because this was a place where the officer might have found ammunition, an item listed in the search warrant. *Id.*

*Horton, Whren, Ewain,* and *Van Dreel* all effectively defeat defendant's argument in the instant case that the search was invalid because the tax-records warrant was a pretext. As long as the warrant was valid, and the officers confined their search to areas permitted by the warrant, their subjective intent was irrelevant. The fact that auto-theft investigators were involved in a search related to tax violations does not alter this analysis, provided the search was properly limited—even if the officers subjectively expected to

find evidence of stolen vehicle parts. Thus, defendant's argument is without merit.[3]

### 2. PROPRIETY OF SEARCH OF VEHICLES

Next, defendant challenges the trial court's determination that an officer's search of the vehicles in defendant's garage was permissible because there is no privacy interest in a VIN and because the plain-view exception applied under the facts of this case.

### a. PRIVACY INTEREST IN VIN

With regard to whether there is a privacy interest in a VIN, defendant does not dispute that the officers were permitted to look through the windshields at the public VIN on the dashboards of the vehicles, or that the search warrant authorized the inspection of areas of the vehicles where the officers might find documents related to the search warrant. However, he contends that the officers exceeded the search by "looking for hidden VINs," i.e., lifting the hood, looking under the seats, and other similar acts. The prosecution does not argue that this aspect of the search was related to the tax-records warrant, but instead

---

[3] Nonetheless, *Sanchez* is distinguishable because record evidence supports the trial court's finding in the instant case that "[d]efendant has presented absolutely no evidence to show that the officers had probable cause to suspect the presence of the stolen vehicles in the [d]efendant's garage so as to require the officers to procure a search warrant." Defendant's contention to the contrary is based on the inference that there is no other explanation for why automobile-theft investigators were involved in a search related to tax fraud and money laundering allegations. However, the officers explained that they were involved because they had knowledge of defendant's suspicious dealings with Miami Motors. This information is relevant to tax-fraud and money-laundering allegations, and refutes the inference that the search was really a pretext to advance their auto-theft investigations.

argues that the officers were looking for VINs, and that there is no privacy interest in a VIN, including one not within public view.

We disagree with the prosecution's assertion that a line of cases, including *New York v Class*, 475 US 106; 106 S Ct 960; 89 L Ed 2d 81 (1986), *People v Brooks*, 405 Mich 225; 274 NW2d 430 (1979), *People v Smith*, 162 Mich App 534; 413 NW2d 42 (1987), and *People v Dinsmore*, 166 Mich App 33; 420 NW2d 167 (1988), vacated on other grounds 430 Mich 894 (1988), unambiguously declares that any viewing of any VIN is not a search and always is permissible. None of the Michigan cases interpreting *Brooks* or *Class* inferred a broad, all-purpose exception for VINs. See also *People v Brewer*, 112 Mich App 670; 317 NW2d 218 (1981); *United States v Caro*, 248 F3d 1240 (CA 10, 2001) (applying a narrow interpretation of the holding in *Class*, *supra*). Rather, the authorities on which the prosecution relies implicitly require probable cause for searches of VINs hidden within a vehicle. Thus, the trial court in the present case erred when it relied on the "VIN exemption" to justify the search of the vehicles.

However, this Court will not reverse a trial court's order if it reached the right result for the wrong reason. *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998). Neither the parties nor the trial court discussed the "automobile exception" that allows searches without warrants or seizures without warrants of automobiles on the basis of probable cause to believe that the vehicle contains contraband. *People v Levine*, 461 Mich 172, 179; 600 NW2d 622 (1999). The exception applies if the search is based on facts that would have justified the issuance of a

warrant, although a warrant was not actually obtained. *Id.* Two bases for the exception are the inherent mobility of automobiles and the pervasive regulation of vehicles, which reduces the expectation of privacy. *People v Carter*, 250 Mich App 510, 515, 517-518; 655 NW2d 236 (2002). The exception applies even in circumstances where it is unlikely that the vehicle will soon be driven away. *Id.* at 514-517. If probable cause exists to believe that a vehicle contains contraband, the ability to search without a warrant includes the search of closed containers that might conceal the object of the search. *People v Kazmierczak*, 461 Mich 411, 422; 605 NW2d 667 (2000) (The smell of marijuana established probable cause permitting the officers to search in the trunk.).

Here, the trial court's error does not affect the outcome in this case because there was probable cause to continue searching for a VIN even after the public VIN checks did not detect a theft. An officer at the scene knew from his past experience with the 1994 Mercedes that the vehicle once had several major parts missing, but now was completely rebuilt. He knew that defendant once reported as stolen a 1995 Mercedes that used many of the same parts of the 1994 Mercedes. He knew that the vehicles were associated with Miami Motors, which had a history of rebuilding stripped cars with parts from stolen cars. He also knew from checking the Law Enforcement Information Network (LEIN) that the 1997 Jeep was a salvage vehicle that had been stripped of major parts, but was now rebuilt, and that defendant was driving it with a salvage title and a dealer plate. Given these circumstances, the officer had probable cause to believe that there were stolen parts in the vehicles.

The search was therefore proper under the automobile exception. *Levine, supra* at 179.

### b. PLAIN-VIEW EXCEPTION

Further, the search of the vehicles was permissible under the plain-view doctrine. In *Champion, supra* at 101, our Supreme Court summarized the plain-view doctrine:

> The plain view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent. *Horton v California*, 496 US 128; 110 S Ct 2301; 110 L Ed 2d 112 (1990); *People v Cooke*, 194 Mich App 534; 487 NW2d 497 (1992). A fundamental characteristic of the doctrine is that it is exclusively a seizure rationale. No searching, no matter how minimal, may be done under the auspices of the plain view doctrine.

Defendant, relying on *Arizona v Hicks*, 480 US 321; 107 S Ct 1149; 94 L Ed 2d 347 (1987), argues that the plain-view doctrine does not apply because the incriminating character of the vehicles was not immediately apparent and that the officer discovered incriminating information only after he began the search.

The record reveals that the officer was lawfully in the house pursuant to a valid warrant to search for evidence of tax-code violations. This warrant permitted the officer to enter the garage, which was a place where he could reasonably expect to find items listed in the warrant. Once in the garage, he was lawfully in a position from which he had a plain view of the 1994 Mercedes and 1997 Jeep. His plain view of the vehicles, his permissible LEIN checks of the dashboard

VINs, and his prior knowledge of the history of the vehicles and their association with Miami Motors established probable cause that they contained stolen parts. Under the plain-view doctrine and the automobile exception to searches without warrants, the officer permissibly continued the search by looking under the hood, under the fenders, inside the passenger compartment, and in other areas. The officer did not violate defendant's Fourth Amendment right against an unreasonable search and seizure, and the trial court properly denied the motion to suppress.

### C. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Finally, defendant argues that trial counsel was ineffective for failing to challenge the search warrant. To establish ineffective assistance of counsel,

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [*People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (internal citations and quotations omitted).]

Because there was no *Ginther*[4] hearing, our review is limited to errors apparent on the record. *People v Knapp*, 244 Mich App 361, 385; 624 NW2d 227 (2001).

Defendant can prevail on this issue only if he can demonstrate that the tax-records warrant should not have been issued. A magistrate may issue a search warrant only on a showing of probable cause, supported by oath or affirmation. *People v Kaslowski*, 239 Mich App 320, 323; 608 NW2d 539 (2000); Const 1963, art 1, § 11. Probable cause is present when the facts and circumstances would allow a reasonable person to believe that the evidence or contraband sought is in the stated place. *Kazmierczak, supra* at 417-418; *People v Brannon*, 194 Mich App 121, 132; 486 NW2d 83 (1992).

Having reviewed the record, we find no evidence supporting defendant's claim that there was insufficient probable cause in support of the tax-records warrant. Defendant does not contend that any of the allegations in the officers' affidavit were fabricated, or that they failed to establish probable cause. The affidavit for search warrant alleged that defendant had not filed a Michigan income-tax return since 1992, which created a suspicion of illegality because defendant had substantial financial dealings with Miami Motors, he reported income on federal income-tax returns, and his automobile and home purchases showed that he had substantial income.

Defendant's argument is based entirely on his contention that the officers must have had an ulterior motive because there is no legitimate reason why automobile-theft investigators would be involved in a

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

search for tax records. However, this argument fails to address the key question, namely, whether there was probable cause for the tax-records warrant. Because defendant fails to establish that there was insufficient evidence to establish probable cause, he cannot establish that his trial counsel's performance was deficient. *Carbin, supra.*

Affirmed.