# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
August 18, 2015

v

JASON TYLER PATTERSON,

        Defendant-Appellant.

No. 321525
Mason Circuit Court
LC No. 13-002760-FH

Before: TALBOT, C.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of attempted manufacture of methamphetamine, MCL 333.7401(2)(b)(*i*), and operating or maintaining a laboratory involving methamphetamine, MCL 333.7401c(2)(f). He was subject to a double penalty under MCL 333.7413(2) and received enhanced sentences of 10 to 40 years' imprisonment for each conviction, to be served concurrently. We affirm.

## I. FACTS

On June 23, 2013, after a passerby notified police of a suspicious bag, police located a bag containing a "one-pot" methamphetamine lab[1] in a dumpster near a dry cleaning business in Mason County. Items inside the bag, included two bottles, a tube, a glass wipes container, a coffee filter, and what appeared to be the remnants of an ice pack. According to police testimony, those items along with others, including pseudoephedrine which can be found in certain cold and decongestant medicines, are used to manufacture methamphetamine in the one-pot method. A fingerprint, later determined to match defendant's print, was lifted from one item and several items were sent to the lab for testing. The case was found to have methamphetamine residue in it. The lab was then packaged and destroyed as hazardous waste pursuant to the Drug Enforcement Agency's protocol.

---

[1] The "one-pot" lab is referred to as such because it simply produces methamphetamine, for the most part, in a single container.

The police were notified when defendant subsequently purchased Sudafed decongestant tablets and, on August 22, 2013, searched the residence where defendant resided with his girlfriend Elizabeth Whitaker. At the residence, police found two cans of starting fluid in a garbage can that had a hole punched in the bottom of them, a partially burned plastic bottle with granules inside of it, blister packs of Sudafed, pulled-apart lithium batteries, a plastic bottle with a tube hanging out of it, and bottles of drain cleaner. Officers testified that the items are indicators of methamphetamine manufacture.

Defendant denied any connection to the manufacture of methamphetamine. Whitaker, who had already pleaded guilty to maintaining or operating a methamphetamine lab as a co-defendant in the case, also indicated that defendant was not involved. However, a friend of defendant's testified that he had used methamphetamine with defendant frequently during the summer of 2013 and had seen defendant manufacture methamphetamine at Whitaker's house using the one-pot method and that Whitaker was also involved in the manufacturing. He also testified that he had picked defendant up and taken him to the dumpster at issue where he saw defendant throw "a black like briefcase bag" into "the first dumpster on the left." Further, he testified that defendant had told him that Whitaker was going to take "the fall" in this case.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that trial counsel was ineffective for failing to object to the admission of the items found in the dumpster and that the trial court erred in admitting this evidence. We disagree.

Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record. *People v Wilson*, 257 Mich App 337, 362–363; 668 NW2d 371 (2003), vacated in part on other grounds, 469 Mich 1018. Evidentiary rulings are reviewed for an abuse of discretion. *Michigan Dept of Transp v Haggerty Corridor Partners Ltd Pship*, 473 Mich 124, 133-34; 700 NW2d 380 (2005).

Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). To establish ineffective assistance of counsel, a defendant generally must show that (1) counsel's performance did not meet an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's errors, the results of the proceeding would be different. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Defense counsel has wide discretion as to matters of trial strategy because counsel may be required to take calculated risks to win a case. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). This Court will not substitute its judgment for that of trial counsel on matters of strategy, nor will it employ the benefit of hindsight to assess the competence of counsel. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). The defendant must overcome the presumption that the challenged conduct might be considered sound trial strategy and must further show that he was prejudiced by the error in question, i.e., that the error likely made a difference in the outcome of trial. *People v Pickens*, 446 Mich 298, 312-315; 521 NW2d 797 (1994).

Defendant asserts that his counsel was ineffective because he failed to object to the admission of the evidence found in the dumpster. To be admissible, evidence must be relevant, subject to the MRE 403 balancing test. MRE 402. Relevance has two components: materiality and probative value. *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). "Materiality is the requirement that the proffered evidence be related to 'any fact that is of consequence' to the action." *Id.* "Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial." *Id.* at 389 (internal quotation marks and citation omitted). It is well established that when a defendant pleads not guilty, the elements of the criminal offense are always "in issue" and thus material because the prosecution carries the burden to prove every element beyond a reasonable doubt. *Id.*

"The probative force inquiry asks whether the proffered evidence tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Crawford*, 458 Mich at 389-390. "The threshold is minimal: 'any' tendency is sufficient probative force." *Id.* at 390, citing MRE 401. MRE 403 precludes the admission of otherwise admissible evidence if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice." "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2001).

The items found in the dumpster were relevant to the prosecution's theory of the case. In closing argument, the prosecutor noted that the dumpster evidence was admitted to show that, given the presence of defendant's fingerprint on an item, defendant had familiarity with how to cook methamphetamine using the one-pot method, which the prosecutor explained was a complicated process. Defendant had denied having anything to do with methamphetamine except for occasional use. The items were material because they tended to refute this claim, showing that defendant was associated with a one-pot methamphetamine lab, which had a tendency to prove that he knew this method for making methamphetamine and was associated with operating or maintaining the methamphetamine lab at his and Whitaker's home. Given that Whitaker was taking full responsibility for the lab at the residence, evidence of defendant's implied familiarity with the process, which made it more likely that he was also or exclusively involved, was highly relevant. Although the fingerprint could, as defendant contends, have been placed on the label innocently, that does not undermine the fact that the evidence had a tendency to prove a material fact. Moreover, that defendant's friend testified that he saw defendant throw the bag containing the meth lab in the dumpster mitigates against a finding of innocence. The evidence tended to make the fact that defendant was operating a methamphetamine lab more probable. Any tendency is sufficient, and therefore, the evidence had probative value. Whatever prejudicial effect the items may have had did not outweigh its probative value and the trial court did not abuse its discretion in admitting the evidence.

Trial counsel is not ineffective for failing to present a meritless argument. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Accordingly, counsel's failure to object to the admission of the items found in the dumpster did not constitute ineffective assistance of counsel.

III. SUBSTITUTION OF COUNSEL

Defendant next contends that the trial court erred in not appointing substitute counsel. We disagree.

The decision regarding substitution of appointed counsel is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

A defendant has the right to counsel under the Sixth Amendment of the United States Constitution. *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012), citing *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). A defendant does not, however, have the right to request the appointment of counsel of his choice. *Id.* "Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). "Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Id.* This could include an assertion by a defendant that the attorney is " 'inadequate, lacking in diligence, or disinterested in [the] case.' " *Buie (On Remand)*, 298 Mich App at 68, quoting *People v Meyers*, 124 Mich App 148, 166; 335 NW2d 189 (1983). This could also include a breakdown in the relationship between the defendant and counsel with regard to "whether a particular line of defense should be pursued" or a legitimate difference in opinion as to a fundamental trial tactic. *Id.* at 67 (citation and quotation omitted). "A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause." *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011). "Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Id.* Moreover, a disagreement between a defendant and his trial counsel with regard to trial strategy, including what evidence to present, is not good cause for substitution of counsel. *Id.*

Defendant's assertion that there was good cause for appointing substitute counsel in this case is without merit. Defendant argues that he lost confidence in counsel, and good cause existed because he would have accepted a plea bargain if he had trusted counsel. The record shows that defendant was concerned about the potential prison sentence he was facing and wanted to be involved in discovery and review of the evidence. Defendant argued that his counsel was holding him "at an arm's length" and did not share certain information. However, there is no indication that trial counsel was unprepared. In fact, the record demonstrates that counsel asked for the right to inspect the evidence, received a witness letter, and was working on pending motions. Counsel negotiated an advantageous plea agreement under which defendant would have received a six-year prison term, and had "at least 12 or more" contacts with the assistant prosecutor and "five or as many as ten" with the chief prosecutor. Furthermore, defendant himself admitted that counsel had been very professional, came over and talked to him when he needed him to and answered his inquiries. Nothing indicates a breakdown in the relationship between defendant and counsel or a legitimate difference in opinion with regard to fundamental trial tactics. On the whole, the record does not support defendant's assertion that

-4-

the trial court abused its discretion in denying defendant's motion for a new counsel because the request was not supported by a showing of good cause.

## IV. PRESERVATION OF EVIDENCE

Defendant next asserts that the trial court erred in denying his motion to dismiss the charges. He argues that his right to due process was violated when the police destroyed the methamphetamine lab(s) before defendant could examine them. We disagree.

Due process guaranteed by US Const, Am XIV requires that the prosecution not suppress material evidence that is favorable to the defense. *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Fox (After Remand)*, 232 Mich App 541; 591 NW2d 384 (1998). To establish a *Brady* violation, a defendant must demonstrate:

> (1) that the state possessed evidence favorable to the defendant; (2) that he did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. [*Fox (After Remand)*, 232 Mich App at 549.]

Under *Brady*, 373 US at 87, suppression of material exculpatory evidence violates a defendant's due process rights, irrespective of the good faith or bad faith of the prosecution. To be material, the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v Trombetta*, 467 US 479, 488-489; 104 S Ct 2528; 81 L Ed 2d 413 (1984).

Nevertheless, where the government fails to preserve evidence whose exculpatory value is indeterminate and only "potentially useful" to defendant, a different test applies. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988). In such a case, the defendant must show that the government acted in bad faith in failing to preserve the evidence. *Id.* at 58. The defendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith. *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992).

Defendant asserts that he did not have an opportunity to conduct an independent test of the evidence and that the destruction "may have resulted in the loss of potential exculpatory evidence." Because defendant's assertion is that the evidence might have been exculpatory or potentially useful, defendant must demonstrate that the police destroyed the evidence in bad faith. See *People v Leigh*, 182 Mich App 96, 98; 451 NW2d 512 (1989). This requirement exists "both [to] limit[] the extent of the police's obligation to preserve evidence to reasonable bounds and confine[] it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 US at 58.

Nothing in the record indicates that the destruction of the evidence was motivated by bad faith. The testimony established that the items were hazardous waste and were destroyed in

accordance with standard procedure. A showing that evidence was destroyed in the course of a routine procedure generally contravenes a finding of bad faith. *United States v Garza*, 435 F3d 73, 75 (CA 1 2006). See also, *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992)("[T]he routine destruction of taped police broadcasts, where the purpose is not to destroy evidence for a forthcoming trial, does not mandate reversal.). The destruction of the methamphetamine lab(s) did not violate due process because defendant failed to show that the destroyed items would have yielded exculpatory evidence or that the police acted in bad faith.

Affirmed.


/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto