## PEOPLE v GALLOWAY

Docket No. 241804. Submitted November 12, 2003, at Detroit. Decided
December 9, 2003, at 9:25 A.M. Leave to appeal sought.

Joel A. Galloway, charged in the Sanilac Circuit Court with manufac-
turing twenty or more, but fewer than 200, marijuana plants, sec-
ond offense, moved to suppress evidence and to quash the informa-
tion and bindover. The challenged evidence consisted of 122 mari-
juana plants seized by the police from a lean-to in the backyard of
his residence and of marijuana cigarette butts and marijuana stems
and seeds seized by the police from inside the residence. Before
Sergeant Lawrence Scott and other police officers arrived at the
defendant's residence, the police received a tip that marijuana was
being grown at the back of the residence and the police conducted
a helicopter flyover of the residence after receiving the tip. A spot-
ter in the helicopter told the officers on the ground that in the
backyard there were pots, potting materials, and a man waving to
the helicopter. Sergeant Scott arrived first at the residence, pro-
ceeded to a side yard where he encountered a neighbor of the
defendant, proceeded to the backyard where he saw another
officer approach an individual, saw marijuana plants inside the
lean-to, saw the defendant heading for the lean-to, and arrested the
defendant after the defendant refused Scott's order to stop. Scott
and another officer then went to the front door of the residence
and were met by the defendant's wife. The wife was placed in a
police car where she eventually signed a form consenting to a
search after repeatedly being asked for consent. The court, Donald
A. Teeple, J., suppressed the challenged evidence and quashed the
information and bindover. The prosecution appealed.

The Court of Appeals *held*:

1. The police intrusion into the defendant's backyard was not a
"knock and talk" procedure that made Sergeant Scott's presence in
the backyard lawful. The seizure of the marijuana plants in the
lean-to does not fit within the plain view exception to the constitu-
tional requirement of a warrant because Scott was not lawfully in
position to have the view of the marijuana plants that he did. The
knock and talk procedure—in which the police, who possess some
information that they believe warrants further investigation, but

that is insufficient to constitute probable cause for a search warrant, approach the person suspected of being engaged in illegal activity at the person's residence, identify themselves as police officers, and request consent to a search for the suspected illegality or illicit items—properly is used to obtain consent to a search and should not be extended to cover the tactics that the police employed in their investigatory entry into the defendant's backyard.

2. The trial court did not err in finding that consent by the defendant's wife to a search of the interior of the residence was invalid because the consent was not unequivocal, specific, and freely and intelligently given.

Affirmed.

MURPHY, J., dissenting, stated that Sergeant Scott acted reasonably in proceeding to the defendant's backyard in an effort to identify the property owner and seek consent to a search and then saw the marijuana plants in plain view. Because Scott was properly and reasonably attempting to execute the knock and talk procedure, consistent with the constitutional protections against unreasonable searches and seizures, there is no reason not to allow the application of the plain view doctrine. Judge MURPHY would reverse the trial court's ruling and remand the case for further proceedings.

1. SEARCHES AND SEIZURES — WARRANT REQUIREMENT — PLAIN VIEW EXCEPTION.

The plain view exception to the warrant requirement allows a police officer to seize items in plain view if the officer is lawfully in the position to have that view and the evidence is obviously incriminatory (US Const, Am IV; Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES — WARRANT REQUIREMENT — CONSENT EXCEPTION.

The consent exception to the constitutional requirement of a search warrant allows a search when consent is unequivocal, specific, and freely and intelligently given (US Const, Am IV; Const 1963, art 1, § 11).

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, *James V. Young,* Prosecuting Attorney, and *Brenda S. Sanford,* Chief Assistant Prosecutor, for the people.

*Kimberly A. Tomczyk* for the defendant.

Before: FORT HOOD, P.J., and MURPHY and NEFF, JJ.

NEFF, J. In this search and seizure case, the people appeal by right an order of the trial court suppressing evidence obtained in conjunction with a "knock and talk" visit by the police to defendant's home. A drug enforcement team entered the backyard of defendant's home, where one of the officers saw marijuana growing in a lean-to attached to the back of the home. The dispositive issue is whether the knock and talk visit can be used as the premise for a warrantless entry of the backyard area of defendant's home to justify the seizure of evidence under the plain view exception to the warrant requirement.

We agree with the trial court that extending the concept of the "knock and talk" visit in this case to cover entry of the backyard of defendant's home violates the constitutional protection against unreasonable search and seizure. US Const, Am IV; Const 1963, art 1, § 11. We affirm the order granting defendant's motion to suppress the evidence and to quash the information and bindover.

## I. FACTS[1]

In May 2001, the Thumb Narcotics Unit of the Michigan State Police conducted a HEMP (Help Eliminate Marijuana Plants) helicopter flyover of defendant's home after the police received an anonymous tip that marijuana was being grown there. The marijuana spotter in the helicopter radioed the ground crew that he observed pots and potting materials in back of the home and saw a man at the back of the property waving at the helicopter. No marijuana

---

[1] These facts are based on testimony and evidence at the suppression hearing.

plants were seen. The ground crew of four plain-clothes officers, and eventually two uniformed officers, descended on defendant's home, arriving in several vehicles. Sergeant Lawrence Scott arrived first, parked in the driveway of defendant's home, and immediately proceeded toward an individual he saw in the side yard, who identified himself as a neighbor. Scott told the neighbor to wait there, and Scott proceeded around the east side of the home to the backyard. He saw another individual sitting at the rear of the home. He saw Trooper Schwalm come around the home and contact that individual. At that point, Scott saw the marijuana plants inside a lean-to attached to the back of the home. Defendant was coming out of the woods at the rear of the property. When defendant headed into the lean-to and did not obey Scott's commands to stop, Scott apprehended and handcuffed him.

In the meantime, other officers had arrived. Scott and another officer then went to the front of the house, which had a carport on the west end, and knocked on the door. Mrs. Galloway, defendant's wife, answered the door. After a protective sweep of the house, the officers took Mrs. Galloway to a police vehicle for questioning. Mrs. Galloway subsequently signed a consent to search form.

At the time the police went to defendant's home, they had the anonymous tip and visual observations of potting materials from the flyover. It is admitted that no marijuana plants were observed from the helicopter. It is undisputed that the police did not have probable cause to obtain a search warrant. The police seized 122 marijuana plants from the lean-to. They also seized marijuana cigarette butts and marijuana stems and seeds from the inside of the residence.

Defendant was charged with manufacturing twenty or more, but fewer than 200, marijuana plants, second offense, MCL 333.7401(2)(d)(ii), MCL 333.7413(2). The trial court concluded that the search and seizure were illegal and suppressed the evidence.

## II. STANDARD OF REVIEW

We review de novo a trial court's ultimate decision on a motion to suppress. *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001). However, we review the trial court's findings of fact for clear error. *Id.* A finding is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made. *Id.* This Court must give deference to the trial court's factual findings, particularly where the credibility of witnesses is involved. MCR 2.613(C); *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999). Accordingly, we may not substitute our judgment for that of the trial court and make independent findings. *Id.* It is the prosecutor's burden to show that a search and seizure challenged by a defendant were justified by a recognized exception to the warrant requirement. *People v Wade*, 157 Mich App 481, 485; 403 NW2d 578 (1987).

## III. PLAIN VIEW SEIZURE

The people argue that the trial court improperly suppressed evidence of the 122 marijuana plants because the police properly accessed defendant's property for a knock and talk and discovered the marijuana plants in plain view. Accordingly, the actions of the police were not offensive to search and seizure principles.

In *Frohriep, supra* at 697, this Court recently addressed for the first time the constitutionality of the "knock and talk" procedure:

> Generally, the knock and talk procedure is a law enforcement tactic in which the police, who possess some information that they believe warrants further investigation, but that is insufficient to constitute probable cause for a search warrant, approach the person suspected of engaging in illegal activity at the person's residence (even knock on the front door), identify themselves as police officers, and request consent to search for the suspected illegality or illicit items.

Whenever the knock and talk procedure is utilized, the ordinary rules that govern police conduct must be applied to the circumstances of the particular case. *Id.* at 698-699.

In this case, the purported knock and talk led to a seizure based on plain view, not a consent to search as in *Frohriep, supra* at 701. The plain view exception to the warrant requirement allows a police officer to seize items in plain view if the officer is lawfully in the position to have that view and the evidence is obviously incriminatory. *People v Champion,* 452 Mich 92, 101; 549 NW2d 849 (1996); *People v Wilson,* 257 Mich App 337, 361; 668 NW2d 371 (2003). The plain view exception is predicated on police convenience. *Champion, supra* at 101. "It would be unreasonably inconvenient to require the police, once they have made a valid intrusion and have discovered probable evidence in plain view, to leave, obtain a warrant, and return to resume a process already in progress." *Id.* at 102.

If the police intrusion was unlawful in the first place, the plain view exception does not apply. *Hor-*

*ton v California*, 496 US 128, 136; 110 S Ct 2301; 110 L Ed 2d 112 (1990); *People v Oliver*, 417 Mich 366, 385 n 16; 338 NW2d 167 (1983); *People v Raybon*, 125 Mich App 295, 300-303; 336 NW2d 782 (1983). The dispositive consideration in this case is therefore whether the police intrusion into defendant's backyard was lawful. We conclude that it was not.

Knock and talk, as accepted by this Court in *Frohriep*, does not implicate constitutional protections against search and seizure because it uses an ordinary citizen contact as a springboard to a consent search. *Frohriep, supra* at 697-698. Fourth Amendment rights may be waived by a consent to search. *Id.* at 702.

This case does not fit within the knock and talk framework. Helicopter surveillance and movement by law enforcement officers on the ground directly into the backyard of a private home do not constitute ordinary citizen contact. The knock and talk in this case is more aptly characterized as an investigatory entry of the back area of defendant's home. Such investigatory entry by law enforcement fails Fourth Amendment safeguards.

Moreover, the alleged knock and talk procedure was not used as a springboard to secure defendant's permission for a search. Instead, it was used as a springboard to a plain view exception to the warrant requirement. This certainly is not the constitutional framework in which this Court accepted knock and talk in *Frohriep. Id.* at 697-699. A predicate to the plain view exception is that the police have the right to be in the position to have that view. *Horton, supra; Oliver, supra.*

Here, a drug enforcement team, consisting of four plainclothes officers and two uniformed officers, descended upon defendant's home, arriving in succession in several vehicles. Sergeant Scott, who discovered the marijuana, did not wait for the other officers to conduct the purported "knock and talk," but instead proceeded directly to the back of defendant's home after his contact with an individual in the side yard of the home. The police report stated that, according to the anonymous tip, the marijuana was in a six-foot by four-foot container right behind defendant's house. Scott testified that after telling the first individual he encountered to wait there, he proceeded around the house and saw a second individual sitting at the rear of the house, who was approached by Trooper Schwalm when he came around the home. Sergeant Scott saw the marijuana plants inside the lean-to in a large container. At that point, defendant was coming out of the woods at the back of the property. The police did not first approach the front door of home, nor did they proceed along a path that the public could be expected to travel in visiting defendant's home, *People v Houze*, 425 Mich 82, 92 n 1; 387 NW2d 807 (1986),[2] or simply approach defendant as he was standing in his yard to ask permission to "look around," *Frohriep, supra* at 701. Only after the marijuana was discovered, did the officers go to the door

---

[2] It is not objectionable for an officer to come upon that part of the property which "has been opened to public common use." The route which any visitor to a residence would use is not private in the Fourth Amendment sense, and thus if police take the route "for the purpose of making a general inquiry" or for some other legitimate reason, they are "free to keep their eyes open," and thus it is permissible for them to look into a garage or similar structure from that location. [*Houze, supra* at 92 n 1, quoting 1 LaFave, Search & Seizure, § 2.3, p 318.]

of the home and knock, at which point Mrs. Galloway answered the door.

When a knock and talk is used as a springboard for obtaining something other than consent to a search, the constitutional framework changes. Merely characterizing a law enforcement maneuver as a knock and talk does not warrant judicial bypass of constitutional safeguards against unreasonable searches and seizures. As this Court prophetically observed in *Frohriep, id.* at 701, "we can envision a situation where the police conduct when executing the knock and talk procedure indicates an unreasonable seizure or results in an unreasonable search . . . ."

By definition, the benefit of the knock and talk tactic carries with it certain costs that presumably keep its use by law enforcement in check:

> We note that when utilizing the knock and talk procedure, the police are "merely asking for permission to search a person's home, recognizing and risking that a refusal would not only alert the suspect that he is being watched but would quite likely leave the police empty handed." Swingle & Zoellner, *"Knock and talk" consent searches: If called by a panther, don't anther,* 55 J Mo B 25 (1999). [*Frohriep, supra* at 698 n 4.]

These costs to law enforcement do not exist in employing the tactics used in this case. Such intrusions cannot be sanctioned under the guise of knock and talk and "ordinary citizen contact." *Id.* at 701.

## IV. RESPONSE TO THE DISSENT

The dissent cites *Frohriep* as authority for concluding that Sergeant Scott's action was reasonable, relying largely on Scott's own testimony in its analysis. We would agree *if* the facts coincided with those in

*Frohriep* and *if* we could properly ignore the trial
court's assessment of credibility in this case. How-
ever, the facts differ greatly from those in *Frohriep*,
and the standard of review precludes crediting Scott's
testimony to contradict the trial court's deter-
mination.

The facts in *Frohriep* indicate that (1) the police
had information that the defendant may have had
controlled substances on his property, (2) the officers
went to the defendant's residence and encountered
him in an open area near a pole barn, and (3) the
officers obtained his consent to search. *Frohriep,
supra* at 694-695, 701. *Frohriep* was a benign contact
by the police that resulted in a consent to search—
facts that properly fit within the realm of "ordinary
citizen contact," *id.* at 701; dissent, *post*. The facts of
this case are quite different.

The trial court's opinion states the facts in perti-
nent part as follows:

> On or about May 29, 2001, the Thumb Narcotics Unit
> assisted by the State Police Aviation Unit was conducting a
> "fly over" of several residences looking for the existence of
> illegal substances. On that day, they spotted "pots and pot-
> ting material" which they could not identify as containing
> any illegal substance or any substance of any kind. The heli-
> copter occupants also observed an individual on the ground
> behind the house waving at them. Armed with this very
> incriminating evidence, the ground crew then came to
> Defendant's residence.
>
> The prosecution admits that, at this point, there was no
> probable cause to obtain a search warrant; that there were
> no exigent circumstances and that this was not a search
> incident to an arrest.
>
> As each officer arrived at the scene, not a single one of
> them went towards the door of the premises. All ran to the
> southeast corner of the premises, which is the back area of

the premises. Upon running to that area, they first encoun-
tered a Mr. Wood, whom they ordered not to move and to
remain stationary until they came back to him. They next
encountered Mr. Galloway "and took him down" because he
was not following "my commands." They also encountered
another individual in the back yard area. The first officer on
the premises testified that immediately coming to the back
yard area, he was able to observe growing marijuana plants
inside a lean-to at the back of the premises through a door-
way to that lean-to.

The court concluded that the police mission did not
constitute a knock and talk, and found as follows:

In the case which is before us, the helicopter made obser-
vations of pots and potting material behind the house. Not a
single police officer when they came to the premises could
see anyone behind the house. Not a single police officer
that came to the premises went to the door of the premises
to knock and ask if they could have consent to search the
premises. Instead, these police officers charged like storm-
troopers to the back of the home where the helicopter had
observed the pots and potting material. Only by chance did
they encounter Mr. Wood and Mr. Galloway in the back
yard. This procedure was not a knock and talk procedure
under any stretch of the imagination. It was a search and
destroy mission aimed directly at searching the back yard
area of the property where the helicopter occupants had
observed the pots or potting material. Were this Court to
find no constitutional violation in this search it would mean
that every citizen in Sanilac County with pots and potting
material in their back yards who wave at an airplane or
helicopter would be subject to this type of warrantless and
unwarranted search of their premises.

The dissent credits the prosecutor's argument, and
improperly relies on Scott's testimony to conclude
that, on the basis of objective facts, Scott acted rea-
sonably in proceeding to the "barrier-free" rear of
defendant's premises to identify the property owner

for purposes of seeking consent to a search. But this testimony clearly was not credited by the trial court and is contrary to the court's findings. The dissent's analysis ignores this Court's obligation to review the trial court's factual findings for clear error, giving special deference to the trial court's findings where the credibility of witnesses is involved. *Farrow, supra* at 209; *Frohriep, supra* at 702. This Court may not substitute its judgment for that of the trial court and make independent findings. *Farrow, supra* at 209; *Frohriep, supra* at 702.

The evidence supports the trial court's findings. The record contains photographs of defendant's home, showing the driveway where Scott parked, the doors, and the officers' access to the side and backyard of the home. The trial court had before it the photographs and other exhibits, including a diagram of the property drawn on the board by Scott, as well as the witnesses' testimony. The trial court could contemporaneously evaluate Scott's testimony in light of the physical evidence to decide whether to credit his testimony that he was attempting to locate the owner of the property to execute the knock and talk. Contrary to the dissent's analysis, the court clearly rejected Scott's testimony. Mrs. Galloway testified that when the officers got out of their vehicles, they were "running" toward her backyard, which she clarified was not "walking," but was "between a fast walk and a run." She saw Scott get out of his vehicle and proceed to the southeast end of the home, which appears to be the opposite end of the house from the driveway and the door leading from the carport to the house. She heard the helicopter overhead.

Although the dissent finds that it was reasonable for the officers to proceed to the back of the house, purportedly for the purpose of seeking consent to search from the person at the back of the property who waved to the helicopter, there was no indication that the person who waved was the property owner. According to Scott's testimony, the individual was in the woods beyond the house. Even though Scott parked in the driveway, apparently next to the home's main door, he did not go to the door. He "walked" over to a person coming from the east[3] (near the northeast corner of the home) and, upon learning it was a neighbor, still did not go to the door of the home. Instead, he proceeded south to the rear of the home, which, according to the tipster, was where the marijuana was located. The officers eventually did go to the main door of the home, leading from the carport at the west side of the house, and knocked on the door. Mrs. Galloway answered the door, and they asked her for consent to search. This was only after they observed the marijuana at the back of the house and had apprehended defendant.

Contrary to the dissent's n 3, *post* at 652-653, viewing the facts objectively to determine whether the police conduct is within the ambit of a knock and talk does not require disregarding that the police had information that the marijuana plants were right behind the house. This is not a matter of an officer's motive in undertaking a knock and talk as in *Frohriep, supra* at 698, or of an officer's subjective inten-

---

[3] Scott could not state whether the person was on defendant's property because he did not know the exact location of defendant's property line.

tions in an ordinary, probable-cause analysis, *Wilson*, *supra* at 355-356.

In *Frohriep, supra* at 698, cited by the dissent, this Court merely noted that the fact that the motive for the contact in a knock and talk is an attempt to secure consent to search does not alter its nature as an ordinary citizen contact. In *Wilson*, also cited by the dissent, this Court discussed the irrelevance of an officer's subjective intentions in regard to a search pursuant to a valid warrant where the search did not exceed the scope of the warrant. *Wilson, supra* at 357. This does not mean that an officer's subjective intentions are never relevant. *Id.* at 355 (factors such as subjective motivations and inviting along another officer from another area of investigation could be evidence that the officers went beyond the scope permitted by the warrant), and *id.* at 355-356 (inventory search and administrative inspection are exceptions to the rule that an officer's motive does not invalidate objectively justifiable behavior under the Fourth Amendment). We therefore disagree with the dissent's view that it is irrelevant whether Scott subjectively anticipated or believed that marijuana would be located in the backyard.

In view of the trial court's findings and the record as a whole, we reject the dissent's analysis characterizing Scott's conduct as an attempt to identify the property owner for purposes of seeking consent to search. To rule otherwise would require improperly substituting our judgment for that of the trial court and making our own independent findings. *Farrow, supra* at 209; *Frohriep, supra* at 702.

V. CONSENT TO SEARCH

The prosecution also argues that the trial court improperly suppressed the evidence that was obtained through the consent to search that was granted by Mrs. Galloway. We find no clear error in the trial court's ruling that Mrs. Galloway's consent to search was invalid. *Frohriep, supra* at 702.

A consent to search permits a search and seizure without a warrant when the consent is unequivocal, specific, and freely and intelligently given. *Id.* The validity of a consent depends on the totality of the circumstances. *Id.* The court found that Mrs. Galloway's consent was not unequivocal, specific, and freely and intelligently given, that her liberty was restrained, and that she reasonably would not have felt free to leave. The court noted that she was not allowed to remain in the house or to sit at the picnic table during questioning, and that the police required her to sit in the police car, where she had to remain and could not smoke until the issue of searching the interior of the home was resolved. The court credited Mrs. Galloway's testimony that she was told that if she did not consent to the search, the whole process would take longer, which would require her sitting in the police car while officers went to get a search warrant.

Having examined the record, we find no clear error in the court's findings. It was undisputed that the police required Mrs. Galloway to sit in the police car while interviewing her and obtaining her consent to search. Testimony established that the police repeatedly asked Mrs. Galloway to sign the consent to search form before obtaining her signature and told

her that they would have to get a warrant if she did not sign the consent. Mrs. Galloway testified that she did not want to sign the consent form and that the police told her it would just take longer if she did not. She stated that she felt she had no choice but to sign the consent. This Court must give deference to the trial court's factual findings where the credibility of witnesses is involved. MCR 2.613(C); *Farrow, supra.*

Having found no error in the trial court's conclusion that the marijuana plants were illegally seized, we need not address the prosecution's argument that the evidence found inside the residence is admissible under the inevitable discovery rule. Absent the evidence of the marijuana, the trial court properly quashed the information and bindover.

Affirmed.

Fort Hood, P.J., concurred.

Murphy, J. (*dissenting*). I respectfully dissent because the evidence showed that Sergeant Lawrence Scott, on the basis of objective facts, acted reasonably in proceeding to the barrier-free rear of defendant's premises in an effort to identify the property owner for purposes of seeking consent to a search and then saw marijuana plants in plain view. I would reverse the trial court's ruling suppressing the marijuana plants seized by the police.

With respect to the so-called knock and talk procedure, this Court in *People v Frohriep*, 247 Mich App 692, 697; 637 NW2d 562 (2001), stated:

> Generally, the knock and talk procedure is a law enforcement tactic in which the police, who possess some information that they believe warrants further investigation, but that is insufficient to constitute probable cause for a search

warrant, approach the person suspected of engaging in ille-
gal activity at the person's residence (even knock on the
front door), identify themselves as police officers, and
request consent to search for the suspected illegality or
illicit items.

The ruling in *Frohriep* indicates, consistent with
the constitutional protection against unreasonable
searches and seizures, US Const, Am IV; Const 1963,
art 1, § 11, that an officer cannot merely go wherever
the officer pleases under the guise of the knock and
talk procedure; there must be a reasonable attempt to
proceed and make proper contact with an individual
or property owner. *Frohriep, supra* at 698-699. In
other words, the police cannot go rummaging through
one's property looking for evidence, and then simply
argue that they were attempting to locate a property
owner in order to request permission or consent to
search. The *Frohriep* panel stated:

> Here, the knock and talk procedure that the police uti-
> lized involved police officers initiating an ordinary citizen
> contact. *The police action, i.e., approaching defendant as
> he was standing in his yard, did not amount to a seizure
> of defendant.* The police simply identified themselves, told
> defendant they had been informed that he had controlled
> substances on his property, and asked defendant's permis-
> sion to "look around." [*Id.* at 701 (emphasis added).]

In general, it would be reasonable for the police to
first go to the door of a home and knock when seek-
ing consent to search. Here, however, when Scott
arrived at the home and parked in the driveway, I
believe it was reasonable for him to first approach an
individual, an unknown neighbor, who he saw stand-
ing in the side yard of defendant's home as opposed
to first going to a door of the residence.

It appears that, after identifying the neighbor, Scott went into the backyard of defendant's home without yet seeing another individual in the rear of the premises. At first glance, the reasonable thing to do would have been to go back to the residence and knock on the door. That being said, the prosecutor points out, consistent with the testimony at the suppression hearing, that Scott went to the backyard after being informed by police personnel in a surveillance helicopter that there was an individual in the backyard waving at the helicopter.[1] The record reveals that the backyard was open without any physical barriers over which to cross or climb.[2]

Scott's testimony indicates that he went to the backyard to identify and speak with the individual waving his arms. Scott testified that he was attempting to locate the owner of the property to execute what we have referred to as the knock and talk procedure, and when he approached the individual in the backyard, he noticed the marijuana plants in plain view. I find that Scott's actions in proceeding to the open backyard in an attempt to obtain consent to a search from the property owner under the facts of this case was proper and reasonable. In measuring the reasonableness of the officer's conduct, there can be no absolute rule that an officer who seeks to obtain consent to search from an individual must first

---

[1] A police officer who worked as a "spotter" from the helicopter testified that, before Scott went to the backyard, he communicated to officers on the ground that an individual was in the backyard waving his arms. The officer further testified that, until this case, he had never seen a person wave at a helicopter during any of his fifty or so surveillance flyovers.

[2] Scott testified at the earlier preliminary examination that he did not have to pass through or over any fences, doors, or gates to get to the backyard.

go to the front door (or any door) of a residence as opposed to approaching an individual who is known to be on the property but outside the residence. This, in fact, was the situation that existed in *Frohriep*.

Because Scott was properly and reasonably attempting to execute the knock and talk procedure, consistent with the constitutional protections against unreasonable searches and seizures, there is no reason not to allow the application of the "plain view" doctrine. "The plain view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent." *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996). Scott was lawfully in defendant's backyard to engage an individual in conversation pursuant to the knock and talk procedure, from which vantage point he saw the marijuana plants. Photographic evidence confirms that the marijuana plants were in plain view. The evidence failed to show that Scott was actually searching defendant's property under the guise of the knock and talk procedure when he viewed the marijuana.[3]

---

[3] I wish to emphasize that, assuming Scott subjectively anticipated or believed that marijuana would be located in the backyard, it would not require suppression of the evidence as long as he was not conducting an actual search and there was objective evidence providing a reasonable basis for Scott to proceed to the backyard in order to conduct the knock and talk procedure. See *People v Wilson*, 257 Mich App 337, 355-356; 668 NW2d 371 (2003) (officer's motive and subjective intentions do not invalidate objectively justifiable behavior under the Fourth Amendment); *Frohriep*, *supra* at 698. I respectfully disagree with the majority's assessment of my dissent as ignoring the trial court's factual findings and not giving the required deference to those findings. On review de novo of the decision to suppress, I am merely reaching a different legal conclusion than the trial court from the court's factual findings. There is no factual dispute, nor did the trial court find to the contrary, that an individual was

Moreover, the evidence indicated that Scott was an experienced police officer with sixteen years of employment with the Michigan State Police, and that he was very familiar with the appearance of marijuana plants. Therefore, the marijuana was properly seized by the police under the plain view doctrine and should not have been suppressed.

I would reverse the trial court's ruling that suppressed the marijuana plants and remand this case for further proceedings.

---

waving his arms in the backyard of the property, that Scott was knowledgeable about this fact through communications from the helicopter, that the backyard was barrier-free, that Scott saw an unknown individual in the side yard upon first arriving at the premises, that Scott then went directly to the neighbor and stopped and spoke to the neighbor, and that Scott then proceeded to the backyard knowing that someone in that area was waving his arms. Even if Scott was proceeding hastily, which movement was halted when he encountered the neighbor, I fail to see how this fact would invalidate execution of the knock and talk procedure. I hardly believe that the *Frohriep* panel would have reached a different conclusion if the police had run up to the defendant at his location near the pole barn.