# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MICHAEL ANDREW RADANDT,

       Defendant-Appellant.

UNPUBLISHED
December 2, 2014

No.  314337
St. Joseph Circuit Court
LC No.  12-017690-FH

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MASON ALAN FULLER,

       Defendant-Appellant.

No.  314431
St. Joseph Circuit Court
LC No.  11-017611-FH

Before:  SHAPIRO, P.J., and WHITBECK and STEPHENS, JJ.

PER CURIAM.

Both defendants entered conditional guilty pleas to one count of manufacturing between 20 and 200 marijuana plants, MCL 333.7401(2)(d)(*ii*), after the trial court denied their joint motion to suppress evidence allegedly obtained in violation of the Fourth Amendment.  This Court denied their applications for leave to appeal.  *People v Radandt*, unpublished order of the Court of Appeals, entered March 14, 2013 (Docket No. 314337); *People v Fuller*, unpublished order of the Court of Appeals, entered March 14, 2013 (Docket No. 314431).  On remand from our Supreme Court, we now consider, as on leave granted, whether the police officers in this case unlawfully expanded the scope of a "knock and talk" procedure and, if a constitutional violation occurred, whether the good-faith exception to the exclusionary rule applies.  *People v Radandt*, 495 Mich 920; 843 NW2d 166 (2014); *People v Fuller*, 495 Mich 920; 843 NW2d 167 (2014).  Because we hold that the officers did not unlawfully expand the scope of the knock and talk procedure, we do not address the applicability of the good-faith exception to the exclusionary rule.  The trial court's order denying defendants' motion to suppress is affirmed.

I. BACKGROUND

St. Joseph County Sheriff's Deputies Michael McCoy and Jeremiah Abnet testified at the suppression hearing that in late August 2011, they received an anonymous tip that marijuana was being grown at defendants' home. In response to the tip, McCoy and Abnet went to the home to attempt to speak with its residents using a "knock and talk" procedure. See *People v Frohriep*, 247 Mich App 692, 697; 637 NW2d 562 (2001). The officers' stated intention was to make contact with the residents in order to evaluate the tip. When the officers arrived, they found what appeared to be a vacant house. The officers circled the entire house and knocked on doors in an attempt to make contact with the residents, but were unsuccessful. While on the property, the officers observed black plastic sheeting covering the upstairs windows in the rear of the home. They also noticed a smoldering burn pit by a barn on the property that indicated either someone was present at the home or had recently been there. McCoy testified that the black plastic sheeting was indicative of a marijuana grow operation, but acknowledged that it was not by itself sufficient to prove criminal activity. The officers also observed holes in the ground from which it appeared plants had been pulled. McCoy testified that, based on his experience, the holes were similar to those left when marijuana plants are pulled from the ground, but he acknowledged that without the anonymous tip he would have no basis for making that conclusion. After circling the property, the officers spoke with neighbors, who granted them permission to walk "trails" on their property that abutted defendants' property. From those trails, the officers observed defendants' backyard, but saw no further evidence of a marijuana grow operation. Finding nothing that caused them to believe a crime was being committed, the officers left the property. They did not request a search warrant at this time or do anything else to follow up on the tip.

In December 2011, McCoy and Abnet received a second anonymous tip, containing substantially similar information about an alleged marijuana grow operation at defendants' property, and decided to return to the property in an attempt to make contact with the residents. Again, the officers' stated intent was to conduct a knock and talk procedure, so as to possibly gain permission to search the premises in order to evaluate the tip. When the officers arrived this time, there were two vehicles parked in the driveway, the door to a nearby barn was open, there was a light on in the barn, power tools were scattered near the barn, and there was a dog running loose on the property. The officers parked their vehicle in the driveway and proceeded toward the home. They bypassed the door nearest the front (west) of the home, which entered only into an enclosed porch, and instead knocked on a "middle" door just to the east of that first door. Upon receiving no answer, the officers proceeded east along a "worn foot path" to the rear of the home, where they knocked on a sliding glass door. While standing at the glass door, the officers heard music and what sounded like two voices, and the officers observed the same black plastic sheeting they had encountered during their previous visit. They also saw a vent fan in a second story window. Finally, McCoy smelled the odor of marijuana. The plastic sheeting and vent fan were only visible from the rear of the home. Further, the smell of marijuana could only be detected from the rear of the home. After getting no response to their knocks, the officers left and obtained a search warrant. They subsequently executed the search warrant, whereupon they discovered approximately 45 marijuana plants and marijuana grow equipment.

Defendants moved to suppress all evidence obtained during the officers' visit to the home, as well as all evidence subsequently derived from the execution of the search warrant, on the basis that the officers impermissibly expanded the scope of a knock and talk procedure when

they entered the backyard of the property. Defendants argued that the officers were not merely conducting a knock and talk, but were clearly using the knock and talk as a subterfuge for investigating the property for evidence of criminal activity. After hearing testimony on the issue, the trial court denied defendants' motion to suppress. The trial court made several factual findings before denying suppression. In particular the court found that the officers stated intention to "knock and talk" was credible, stating "I don't think it was a subterfuge". The court also found that the side door was the ordinary entry door and that the officers followed a well-worn path to the rear of the home observing an open door, tools and a loose dog. The court found that it was in this effort that the officers heard voices and honestly thought that they would encounter people to whom they could talk. It was then that the officers smelled the drugs wafting from inside the home and left to request a warrant. The trial court reasoned that the officers acted reasonably by proceeding into the backyard after they observed signs that the residents were present either in or around the house but received no response to their knocks nearer to the front curtilage of the house. The trial court noted that there was no fence blocking entry into the backyard, and no signs indicating an intent to keep the public out. Further, the officers followed an observable path to the rear door in an attempt to make contact with the residents, and they had no reason to suspect that they would find evidence of criminal activity while back there.

## II. MOTION TO SUPPRESS

Defendants argue that the trial court erred in denying their motion to suppress. We disagree. In a suppression hearing, we review the trial court's ultimate decision de novo, but review the trial court's findings of fact for clear error. *People v Brown*, 297 Mich App 670, 674; 825 NW2d 91 (2012) (quotation and citation omitted). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Swirles (On Remand)*, 218 Mich App 133, 136; 553 NW2d 357 (1996).

Both the United States and the Michigan Constitutions guarantee the right against unreasonable searches and seizures. *People v Champion*, 452 Mich 92, 97; 549 NW2d 849 (1996); US Const Am IV; Const 1963, art 1, § 11. Generally, a search and seizure conducted without a warrant is per se unreasonable unless it falls within a specific, well-defined exception to the warrant requirement. *Champion*, 452 Mich at 98. One such exception is the plain view exception. *People v Galloway*, 259 Mich App 634, 639; 675 NW2d 883 (2003). That exception allows police officers to seize items in plain view "if the officer is lawfully in the position to have that view and the evidence is obviously incriminatory." *Id*. (citation omitted). By extension, the plain smell doctrine provides that the plain smell of contraband may provide probable cause for a search. *People v Kazmierczak*, 461 Mich 411, 426-427; 605 NW2d 667 (2000).

On the record before us, we conclude that the trial court's factual findings were supported by the evidence and were not clearly erroneous. The officers entered upon defendants' property in December 2011 for the legitimate purpose of conducting a knock and talk; that is, to speak with defendants about the tip they received. *Frohriep*, 247 Mich App at 697-698. The officers' decision to move to the rear of the home, after receiving no response at the first direct entrance to

the home, was reasonable in light of the various observable signs that the residents were present either in or around the home.

Defendants argue that the backyard constituted part of the curtilage of the home, such that the officers' entry was impermissible. While not untenable, such a claim lacks merit given the fact that there was an observable path leading from the main entry to the rear sliding glass door and the fact that defendants took no steps to protect the area from the public, such as putting up a fence or "no trespassing" signs. See *People v Powell*, 477 Mich 860, 861; 721 NW2d 180 (2006), citing *United States v Dunn*, 480 US 294, 301; 107 S Ct 1134; 94 L Ed 2d 326 (1987). Regardless, "[a] mere 'technical trespass' does not transform an otherwise reasonable investigation into an unreasonable search." *People v Houze*, 425 Mich 82, 93; 387 NW2d 807 (1986). Thus, where officers are engaged in a knock and talk investigative procedure, they are not categorically excluded from entering the curtilage if circumstances make it reasonable to conclude that they might encounter the person being sought. See *Hardesty v Hamburg Twp*, 461 F 3d 646, 654 (CA 6, 2006). Such was the case here. Because the officers were lawfully present in the backyard as part of an effort to make contact with defendants, the evidence they discovered—including the plastic sheeting, vent fan, and smell of marijuana—could lawfully be used in support of a search warrant.

Finally, defendants argue that even if the officers' conduct in December 2011 was reasonable, their conduct in August 2011 was not, and therefore that initial visit impermissibly tainted the subsequent visit. We need not address the propriety of the officers' actions in August 2011, as both officers testified that they observed nothing on the premises on that occasion that would establish probable cause or reasonable suspicion to believe that criminal activity was afoot. To the contrary, the officers' lawful observations in December 2011 were independently sufficient to establish probable cause for a search warrant.

In sum, the officers did not violate defendant's constitutional rights when they observed and smelled signs of criminal activity while present in defendants' backyard in December 2011. The trial court did not clearly err in finding that the officers had a legitimate reason for entering the backyard, and it correctly denied defendants' motion to suppress.

Affirmed.

/s/ William C. Whitbeck
/s/ Cynthia Diane Stephens