*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 14, 2019

Plaintiff-Appellee,

v

No. 340698
Kent Circuit Court
LC No. 15-007600-FC

JAYLEN DEWAYNE REYNOLDS,

Defendant-Appellant.

Before: METER, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Defendant, Jaylen DeWayne Reynolds, appeals as of right his convictions of assault with intent to do great bodily harm less than murder (AIGBH), MCL 750.84, and possession of a firearm when committing a felony (felony firearm), MCL 750.227b. We affirm.

## I. BACKGROUND

Defendant's convictions arise from the non-fatal shooting of his ex-girlfriend's boyfriend on July 18, 2015. Defendant was in a relationship with Bahishta Baegzad. The two resided in one apartment, which they shared with Baegzad's two-year-old daughter. Defendant and Baegzad also shared a single cellular phone. Defendant and Baegzads' romantic relationship ended, however, in early July 2015. Yet, the two continued to share the apartment and cellular phone. By mid-July, Baegzad had begun dating the victim. During the early morning hours of July 18th, defendant refused to let Baegzad leave the apartment to see the victim. Defendant sent the victim several inflammatory text messages and the victim eventually showed up at the apartment intending to fight defendant. According to the victim, defendant came out of the apartment and shot at him multiple times. The victim ran and hid in some nearby bushes, but eventually walked out from the bushes. At this time, defendant shot the victim twice in the forehead and once in the knee.

Several police officers responded to the apartment complex and safely secured the victim, defendant, and Baegzad. The victim, defendant, and Baegzad were all unarmed. Officers interviewed Baegzad, who informed them that her daughter was alone inside the apartment. Baegzad then gave the officers consent to enter the apartment. Officers announced their

presence and, when there was no response, "entered the apartment to physically look for bodies." In doing so, the officers discovered several firearms and ammunition "in plain view, down on the ground." The officers also found the child, who was not harmed. The officers did not touch the weapons, but, they did remove the child from the apartment after obtaining Baegzad's consent to do so. Later that day, the officers obtained a warrant, returned to the apartment, and seized the weapons.

Defendant moved *in limine* to exclude evidence of the weapons found in his apartment from trial. The trial court denied the motion, reasoning that the initial search was authorized by the emergency-aid exception to the warrant requirement and that Baegzad had given officers consent to search the apartment. Defendant's theory at trial was that he was defending himself after he saw the victim reach in his waistband for a gun. The jury rejected this theory, finding defendant guilty of AIGBH and felony-firearm. This appeal followed.

## II. ANALYSIS

Defendant argues that the trial court improperly denied his motion to suppress the evidence of the weapons discovered in his home. According to defendant, the initial warrantless search was unconstitutional. Although defendant acknowledges that officers obtained a warrant before seizing the weapons, he argues that the warrant was "tainted" by the initial warrantless search. We review de novo the trial court's ruling at a suppression hearing, but review its factual findings for clear error. *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003). "A finding is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id.*

"It is well settled that both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004) (internal citation and quotation marks omitted). The reasonableness of a search and seizure depends upon the specific facts and circumstances of the case. *People v Jordan*, 187 Mich App 582, 586; 468 NW2d 294 (1991). Police officers generally must obtain a warrant before conducting a search, *People v Levine*, 461 Mich 172, 178; 600 NW2d 622 (1999), and "a search conducted without a warrant is unreasonable unless there exists . . . exigent circumstances establishing an exception to the warrant requirement," *Jordan*, 187 Mich App at 586. The burden is on the prosecution to demonstrate that the search was justified by an exception to the warrant requirement. *Galloway*, 259 Mich App at 638.

The trial court found that the initial warrantless entry was justified under the emergency-aid exception. "The emergency-aid exception to the warrant requirement allows police officers to enter a dwelling without a warrant under circumstances in which they reasonably believe, based on specific, articulable facts, that some person within is in need of immediate aid." *People v Lemons*, 299 Mich App 541, 545-546; 830 NW2d 794 (2013) (internal citation, brackets, and quotation marks omitted). The reasonableness of the warrantless entry does not depend on how serious the crime being investigated is, and "ironclad proof of a likely serious, life-threatening injury" is not required to invoke the emergency-aid exception. *Id*. at 548-549 (internal citation and quotation marks omitted). The police do not need to possess probable cause that a person is in need of immediate aid before entering a dwelling, but rather, must possess "a reasonable belief

that such circumstances exist." *People v Davis*, 442 Mich 1, 20; 497 NW2d 910 (1993). Once inside the dwelling, "the officer may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance." *Id*. at 26.

In this case, Baegzad informed the officers that her two-year-old child was alone in the apartment. As the trial court recognized, the officers were responding to an active-shooter call and the main suspects did not have any firearms on them. Thus, a reasonable concern existed that the child was in reach of a firearm. Moreover, at this point in the officers' investigation, it was not clear that the perpetrator had actually been secured. Accordingly, a reasonable concern existed that an active shooter could have been in the apartment with the child. The officers announced their presence at the apartment, but the child did not give any response. The child's failure to respond created a reasonable belief that the child was in need of immediate assistance. Thus, we agree with the trial court that the initial search was authorized by the emergency-aid exception to the warrant requirement.

The trial court also found that the consent exception authorized the warrantless search. "The consent exception permits a search and seizure if the consent is unequivocal, specific, and freely and intelligently given" by a person "possessing common authority over the property." *People v Mahdi*, 317 Mich App 446, 460; 894 NW2d 732 (2016). The scope of the ensuing search is limited to the authority granted by the consenting party. *Id*. at 461. Defendant does not argue that Baegzad's consent was not unequivocally, specifically, freely, and intelligently given; rather, defendant argues that Baegzad did not have the authority to authorize a search of his apartment. We disagree. The record confirms that defendant and Baegzad shared the apartment, which operated as Baegzad's primary residence. Baegzad's control over the apartment granted her the authority to authorize the search. Accordingly, under both the emergency-aid and consent exceptions, the officers had constitutional authority to conduct a warrantless search of the apartment for the limited purpose of locating Baegzad's daughter and determining if she was in need of immediate aid.

The officers testified that they entered the apartment and conducted a brief search to uncover any persons who may have been present there. The officers located the child and, during their search, noticed the weapons in plain view on the floor of a bedroom. Therefore, the record confirms that officers discovered the weapons during a lawful, warrantless search of the apartment. Accordingly, because there is no constitutional infirmity with regard to the first, warrantless search, defendant's argument that the subsequent, warranted search was "tainted" by the illegality of the first search is without merit. Thus, we conclude that the trial court properly denied defendant's motion to suppress the evidence of weapons obtained from his apartment.

Affirmed.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Thomas C. Cameron

-3-