*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL TERRY WRIGHT,

        Defendant-Appellant.

UNPUBLISHED
March 13, 2026
9:47 AM

No. 368312
Oakland Circuit Court
LC No. 2020-275750-FH

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

Law enforcement officials stopped defendant, Michael Terry Wright, while responding to a report of an ongoing armed assault because he in part matched the suspect's description as an African-American male driving a silver or grey Jeep in the immediate vicinity of the alleged assault. The stop yielded drugs and trafficking paraphernalia. Defendant contends on appeal that several aspects of the stop were constitutionally infirm and thus the trial court erred in denying his motion to suppress evidence flowing from it. We agree that at least one aspect of the stop ran afoul of the constitutional principles protecting citizens from unlawful seizures. The trial court made clearly erroneous findings of fact contradicted by video and audio evidence from the stop, which permitted the officers to ultimately discover the incriminating evidence. We reverse the trial court's denial of defendant's motion to suppress, vacate defendant's convictions, and remand for further proceedings.

## I. BACKGROUND FACTS & PROCEDURAL HISTORY

On the afternoon of April 2, 2020, a woman called 911 to report that a man assaulted her near Pike and Ardmore streets in Pontiac, and that he was chasing her with a gun. She disclosed to dispatch the man's name (Orlando Robertson), his skin color (black, light-to-medium skinned), his vehicle color and make (a grey or silver Jeep SUV), his dress (a red jersey), and that a female accompanied him. 911 dispatch relayed this information contemporaneously to law enforcement officials while the caller successfully made her way to the nearby police station during the call.

Detectives Brian Wilson and Paul Flaviani of the Oakland County Sheriff's Department immediately responded from their location a short distance away. After checking the parking lot of the store where the caller reported the incident occurred, Wilson turned onto a nearby street and immediately observed a silver Jeep Cherokee driven by a black male heading eastbound, in a direction away from the police station. So, about two minutes after hearing the dispatch and without observing that vehicle violate any traffic laws, Wilson initiated a stop.

Defendant was the driver—and sole occupant—of that vehicle. He was wearing a grey, zip-up hoodie. Wilson approached, explained why he pulled defendant over, and asked for identification. According to Wilson, defendant was not able to provide any identification; so, Wilson ordered him out of the Jeep. Review of the dashcam video of this portion of the encounter reveals that about 40 seconds passed from the moment Wilson reached the driver's side door and ordered defendant out of the vehicle.

Before opening the driver's side door, Wilson reached into the vehicle and across defendant to unbuckle his seatbelt. Defendant then stepped out with his back toward Wilson and his hands behind his back as directed. During the extremely brief time defendant stood from the driver's seat of the vehicle and before Wilson placed handcuffs on defendant, Wilson allegedly observed that defendant's right front sweatshirt pocket was open. Looking inside during this split-second window, Wilson claims he saw "a plastic Baggie containing other smaller plastic Baggies, containing off-white materials." To Wilson's eye and informed by his experience investigating drug crimes, those baggies contained illegal drugs.

A warrantless search conducted immediately after cuffing defendant and turning him around to face the squad car confirmed Wilson's suspicion—inside were three bags containing distribution amounts of crack cocaine (6.4 grams), powder cocaine (3.4 grams), and heroin mixed with fentanyl (2.18 grams). Notably, Wilson did not pat down defendant upon turning him around to face the squad car but immediately reached into defendant's right sweatshirt pocket to remove the baggie. A subsequent search of defendant's vehicle yielded additional indicia of drug trafficking, namely a digital scale, more than $600 in cash, and torn/folded lottery tickets (which are commonly used for packaging drugs). Raising additional questions about the exchange between defendant and Wilson prior to his removal from the car, officers also found defendant's driver's license in the bottom door pocket on the inside of the driver's side door.

Both sides agree that defendant was not the individual reported to have assaulted and then chased with a handgun the woman who called 911. Defendant just happened to be committing his drug crimes hidden in plain sight, which officers discovered only because they were searching for someone else bearing some resemblance to him and driving a similar vehicle. A jury convicted defendant of possession with intent to deliver (1) less than 50 grams of heroin and (2) less than 50 grams of cocaine, each in violation of MCL 333.7401(2)(a)(iv). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 40 months to 40 years' imprisonment for each conviction. He appeals by right.

## II. MOTION TO SUPPRESS EVIDENCE FROM THE STOP

The main issue on appeal is whether the trial court correctly denied defendant's motion to suppress the drugs seized from his pocket, and the scale, cash, and lottery tickets discovered in his

vehicle. He raises several arguments in support of his contention that the officers violated his Fourth Amendment rights, including that the stop was not justified in the first instance, that the officers exceeded the scope of the stop, and that the drugs in his pocket were not in plain view. For the sake of this appeal, we assume the officers reasonably suspected defendant was the armed suspect they were looking for and thus were permitted to briefly detain defendant under *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), by commencing the stop in the first instance.[1] But for the reasons set forth next, we conclude they improperly exceeded the scope of the stop, and the trial court therefore erroneously denied defendant's motion to suppress.[2]

## A. LEGAL BACKGROUND

The Fourth Amendment to the United States Constitution (and its counterpart, Article 1, § 11 of the 1963 Michigan Constitution) protect against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. Under *Terry*, a police officer does not violate the Fourth Amendment by seizing a person without obtaining a warrant supported by probable cause when the officer does so "for purposes of investigating possibly criminal behavior . . . ." 392 US at 22. The Fourth Amendment permits these colloquially named "*Terry* stops" only "if an officer has an objectively reasonable *particularized* suspicion that the specific individual being stopped is engaged in wrongdoing." *People v Prude*, 513 Mich 377, 387; 15 NW3d 249 (2024) (quotation marks and citation omitted).

We review de novo a trial court's ultimate decision on a motion to suppress evidence. *People v Wheeler*, 336 Mich App 361, 365; 970 NW2d 438 (2021). This court reviews the trial court's factual findings for clear error, which exists if we have a definite and firm conviction that a mistake was made, *id*., and gives deference to the trial court's assessment of a witness's credibility, MCR 2.613(C); *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003).

---

[1] Defendant sought leave to immediately appeal from the trial court's order denying his motion to suppress, which this Court denied "for failure to persuade the Court of the need for immediate appellate review." *People v Wright*, unpublished order of the Court of Appeals, entered January 20, 2022 (Docket No. 359587). Judge GLEICHER dissented, writing that "[i]t appears that defendant's race was the primary factor motivating the stop, as it is highly unlikely that had the perpetrator been described as a white male, the police would have stopped every white male driving a grey or silver Jeep. The description provided was simply too vague to give rise to individualized suspicion that defendant was the perpetrator of the robbery." *Id*. (GLEICHER, J., dissenting).

[2] We therefore do not address any other issue raised on appeal by defendant's counsel (including that the trial court did not properly affirm defendant's waiver of his right to counsel, that the prosecutor impermissibly goaded defendant into discussing his prior convictions, that Flaviani provided improper drug-profile testimony, and that the trial court's sentence was unreasonable and disproportionate) or by defendant in his Standard Four Brief (that the search warrant for his cell phone was invalid, that he received ineffective assistance of counsel, that the prosecutor failed to disclose evidence in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and cumulative error).

B. ANALYSIS

Defendant contends officers exceeded the scope of the *Terry* stop by continuing it after seeing that defendant was neither wearing a red jersey nor accompanied by a female, as well as that they did not give him a chance to present his identification. These facts, he asserts, would have confirmed that he was not the person for whom they were looking and thus extinguished reasonable suspicion under *Terry*. We agree.

Start with the basics. *Terry* does not authorize an officer to conduct "a general exploratory search for whatever evidence of criminal activity he might find." 392 US at 30. Rather, "*Terry* stops are limited in both scope and duration." *Johnson v VanderKooi*, 509 Mich 524, 539; 983 NW2d 779 (2022). An officer may "make reasonable inquires aimed at confirming or dispelling his suspicions" supporting the stop, *Minnesota v Dickerson*, 508 US 366, 372; 113 S Ct 2130; 124 L Ed 2d 334 (1993) (quotation marks and citation omitted), which may "last no longer than is necessary to effectuate that purpose," *Rodriquez v United States*, 575 US 348, 354; 134 S Ct 1609; 191 L Ed 2d 492 (2015) (cleaned up). Courts evaluate *Terry* stops objectively: "would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry*, 392 US at 21-22 (quotation marks and citation omitted).

Now to what facts were available to the officers when they seized defendant. The audio recordings from dispatch confirm that they were looking for a black man named Orlando Robertson, who was wearing a red jersey, driving a grey or silver Jeep, and accompanied by a female. That combination of information should have exculpated defendant during the *Terry* stop, for while he matched some of that description, defendant was pronouncedly not Orlando Robertson, wearing a red jersey, or accompanied by a female. There was also no indicia when the officers encountered defendant's vehicle that suggested the vehicle was fleeing the scene of the alleged assault or seeking to avoid detection by the police.

In concluding to the contrary, the trial court found that the officers did not receive the exculpatory facts (red jersey and with a woman) until after they commenced the stop. That was clearly erroneous. The audio of the dispatch call makes plain that information was provided to the officers before they seized defendant and thus is contrary to Wilson's testimony that he learned of it "later than the traffic stop." Indeed, Detective Flaviani was equivocal on this point, testifying at the suppression hearing that he did not "remember" if he heard information about the jersey and the woman and that he might have just "missed" it. Accordingly, because the electronic evidence contradicts the trial court's factual findings, we cannot give credence to those findings. See *People v Trapp*, 335 Mich App 141, 152, 163; 966 NW2d 420 (2020); cf. *People v Kavanaugh*, 320 Mich App 293, 298; 907 NW2d 845 (2017) (explaining that this Court need not "rely on the trial court's conclusions as to what [a] video contains").

The trial court also anchored its denial of defendant's motion to suppress in concluding that Wilson and Flaviani credibly testified defendant did not have his identification, finding as a matter of fact that "[w]hen asked for his identification, the Defendant stated he did not have any." That fact permitted the officers to escalate the encounter by ordering defendant out of the vehicle forty seconds after walking up to defendant's vehicle. See, e.g., MCL 257.311, MCL 257.901; see

-4-

also *People v Chapo*, 283 Mich App 360, 368; 770 NW2d 68 (2009) (ordering occupants out of a vehicle during a stop does not generally violate the Fourth Amendment).

But that factual finding is also clearly erroneous. Video and audio evidence from the stop reflects that before defendant exited the vehicle,[3] he told Wilson "I got my ID right here, man," and then repeated "I got my ID" after exiting. Physical evidence confirms defendant's assertion— officers later discovered defendant's driver's license in the pocket of his driver's side door. Again, though we must generally defer to a trial court's factual findings, we need not "tacitly endorse obvious errors under the guise of deference." *People v McSwain*, 259 Mich App 654, 683; 676 NW2d 654 (2003) (quotation marks and citation omitted).

In our view, we are left with a firm and definite conviction that the trial court's finding credible the officers' testimony on these points was an objective falsity.[4] And other than the failure to provide identification, neither the trial court nor the prosecutor offered any other justification for extending the officers' *Terry* stop of defendant. Accordingly, the trial court erroneously denied defendant's motion to suppress evidence flowing from the stop.

## III. CONCLUSION

For these reasons, we reverse the trial court's denial of defendant's motion to suppress, vacate defendant's convictions, and remand for further proceedings. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock

---

[3] Wilson's body cam audio was not working during the stop. But a responding officer's dashcam captured video and audio from the stop before Wilson exited the vehicle. It did not record the initial portion of the encounter, but what is indisputable is that defendant can be loudly, forcefully, and passionately heard stating that he had his license for all to hear.

[4] To be sure, we have no reason to discount the officers' stated community- and officer-safety concerns that informed their actions. But those laudable goals permit warrantless searches and seizures consistent with the Fourth Amendment under *Terry* only if officers reasonably suspect criminality is afoot. And as set forth, the facts at issue here do not support the officers' extension of the *Terry* stop.