*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TERRY JAMES ROBINSON,

Defendant-Appellant.

UNPUBLISHED
December 26, 2024
4:09 PM

No. 362501
Genesee Circuit Court
LC No. 20-046933-FC

Before: GADOLA, C.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree premeditated murder, MCL 750.316, and sentenced to life imprisonment without the possibility of parole. Defendant appeals as of right, arguing he received ineffective assistance of counsel. We affirm.

## I. FACTS

This case arises out of the murder of defendant's roommate, Alphonso Taylor. In May 2020, defendant and Taylor were arguing because defendant did not want Taylor's girlfriend, Angela Flood, living in their home. During the argument, defendant threatened to kill Taylor. Taylor then left, while Flood remained at the home with defendant. Defendant, who had a utility knife on his person, made numerous comments that he was going to kill Taylor and Flood and cut them up in little pieces after Taylor returned home. When Taylor arrived home at approximately 11:00 p.m., Flood told Taylor about defendant's threats. Taylor said that he could not live at the residence with defendant any longer and left. Taylor walked down the street to the home of his aunt, Annie Wooding. Taylor returned home several minutes later, and his argument with defendant continued. Defendant was sitting on the couch, Flood was sitting across from defendant, and Taylor was standing close to defendant. Defendant told Taylor that he was going to cut and slaughter Taylor like a pig. Defendant then punched Taylor in the chest, Taylor punched defendant in the chest in response, and the two exchanged several more punches. Defendant stabbed Taylor in the upper left arm, the left side of his chest, and left flank (between his ribs and hip). Defendant got off the couch and stepped back from Taylor, and Taylor told Flood to go to Wooding's house and call the police. Flood ran to Wooding's house and Wooding called 911.

-1-

When police arrived at the residence, defendant was gone and Taylor was laying on his back on the front porch with a large stab wound to his upper left bicep, bleeding profusely. Taylor was pronounced dead at the scene. Police located and arrested defendant at an intersection several blocks from the residence, where they also recovered defendant's cell phone and a utility knife. At the time of his arrest, defendant spontaneously told the arresting officer that Taylor hit him first. The autopsy of Taylor's body determined that Taylor suffered numerous incised wounds to his left arm, lateral left chest area, and left flank. The stab wound to Taylor's upper left arm nearly severed a major artery, causing him to bleed profusely. The cause of Taylor's death was determined to be multiple incised wounds, and the manner of death was homicide.

At trial, defendant argued that Taylor initiated the altercation by punching defendant in the face, and defendant acted in self-defense. The jury found defendant guilty of first-degree premeditated murder, and the trial court sentenced defendant to life imprisonment without the possibility of parole. Defendant thereafter filed a motion for a new trial or an evidentiary hearing in the trial court, arguing that trial counsel provided ineffective assistance. The trial court denied the motion without conducting an evidentiary hearing. Defendant subsequently filed a motion to remand for an evidentiary hearing in this Court, and this Court granted defendant's motion and remanded the matter to the trial court for a *Ginther*[1] hearing. *People v Robinson*, unpublished order of the Court of Appeals, entered February 15, 2024 (Docket No. 362501). On remand, defendant filed a second motion for a new trial and, after conducting a *Ginther* hearing, the trial court found that defendant had not established that trial counsel's performance fell below an objective standard of reasonableness, nor that defendant was prejudiced by counsel's purported errors. The trial court denied defendant's second motion for a new trial. Defendant now appeals.

II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that trial counsel provided ineffective assistance by failing to present evidence of Taylor's character for aggression and prior acts of violence. "Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *Id*. (citation omitted). This Court reviews the trial court's factual findings for clear error, and reviews de novo questions of constitutional law. *Id*. "The trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and firmly convinced that it made a mistake." *People v Johnson*, 342 Mich App 90, 93-94; 992 NW2d 668 (2022).

Under both the Michigan and United States Constitutions, criminal defendants have the right to the assistance of counsel. Const 1963, art 1, § 20; US Const, Am VI. "This right guarantees the effective assistance of counsel." *Yeager*, 511 Mich at 488, citing *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To obtain a new trial on the basis of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance,

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). To establish that counsel's performance was deficient, a defendant must establish that "counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (quotation marks and citation omitted). Counsel is presumed effective, and a defendant alleging ineffective assistance "bears a heavy burden of proving otherwise." *People v Muniz*, 343 Mich App 437, 448; 997 NW2d 325 (2022) (quotation marks and citation omitted). A defendant asserting an ineffective assistance claim also bears the burden of establishing the factual predicate for the claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Defendant argued in the trial court, and argues now on appeal, that trial counsel failed to investigate and call at trial Marion Terry, Antoine Kemp, and defendant's brother, Brian Robinson; as a result, trial counsel failed to present their testimony concerning Taylor's character for aggression and his prior acts of violence.[2] "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). However, "[c]ounsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Trakhtenberg*, 493 Mich at 52. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 US at 690-691. Trial counsel must conduct "an independent examination of the facts, circumstances, pleadings and laws involved . . . ," which includes "pursuing all leads relevant to the merits of the case." *People v Grant*, 470 Mich 477, 486-487; 684 NW2d 686 (2004) (citations omitted).

At the *Ginther* hearing, Marion testified that she had known defendant for many years and met Taylor through defendant. Taylor sometimes had an aggressive character, and Marion saw Taylor instigate physical fights with defendant on four or five occasions. She never saw defendant instigate a fight with Taylor. Marion further testified to an incident 7 to 10 years prior in which Marion, defendant, and Taylor were helping Marion's friend move, and Taylor became physically aggressive with the nephew of Marion's friend. Marion was willing to testify at defendant's trial but no one asked her to testify, and she never spoke with trial counsel. Kemp testified at the *Ginther* hearing that defendant is his uncle, and he lived with defendant and Taylor for approximately six months in 2018 because defendant and Taylor "kept getting into it," and Kemp wanted to protect defendant. Kemp saw Taylor instigate physical fights with defendant more than 10 times, but never saw defendant instigate a physical fight with Taylor. Kemp also saw Taylor threaten defendant with a rifle more than once. Kemp never spoke to trial counsel and was not asked to testify. Brian testified that he knew Taylor through defendant, and that Taylor had a reputation for being aggressive. Brian spoke with trial counsel by phone and told counsel about Taylor's aggressive reputation, but counsel did not ask Brian to testify.

---

[2] Because Marion Terry's last name is the same as defendant's first name, we refer to her as Marion for clarity. Additionally, because Brian Robinson and defendant share the same last name, we refer to Brian by his first name.

Turning first to defendant's argument that trial counsel failed to investigate these three witnesses, defendant has not established that trial counsel's performance fell below an objective standard of reasonableness. With respect to Marion and Kemp, the trial court did not make any findings as to whether trial counsel failed to investigate these witnesses. At the *Ginther* hearing, trial counsel testified that, to prepare for trial, he met with defendant twice a month for the year and a half that he represented defendant, and they discussed the instant events and defendant's background. He did not recall speaking to Marion or Kemp, nor were their names familiar to him. Defendant presented no evidence demonstrating that he ever made trial counsel aware of the existence of these witnesses or to what they would testify if called at trial. Nor did defendant present any evidence that these witnesses contacted trial counsel. Absent such evidence, it is unclear how trial counsel would have uncovered the identities of these witnesses through a reasonable investigation. For the same reason, defendant's argument that trial counsel was ineffective for failing to call Marion and Kemp as trial witnesses also fails. Defendant bears the burden of establishing the factual predicate for his ineffective assistance claim, *Douglas*, 496 Mich at 592, and he has not established that trial counsel's failure to investigate or call Marion and Kemp as witnesses fell below an objective standard of reasonableness when defendant presented no evidence demonstrating that trial counsel was aware of these witnesses.

With respect to defendant's argument that trial counsel was ineffective for failing to investigate and call Brian as a trial witness, defendant has not established that trial counsel's performance fell below an objective standard of reasonableness. The trial court found that trial counsel did, in fact, investigate Brian, and this finding is supported by the record evidence. Brian testified that he spoke with trial counsel and relayed the substance of his *Ginther* hearing testimony during that conversation. Trial counsel also testified that he spoke to Brian; although trial counsel did not recall the substance of the discussion, he reviewed Brian's affidavit at the *Ginther* hearing and recalled the information contained in the affidavit was somehow relayed to him before trial. The trial court further found that trial counsel's decision not to call Brian as a witness was a reasonable strategic decision. Trial counsel testified that he determined it would not benefit defendant to call Brian as a trial witness because family members are often seen as less credible by jurors. Further, counsel believed that the jury would not find Brian's testimony, that Taylor was aggressive toward defendant, credible because Brian did not take any steps to remove defendant from the home he shared with Taylor or to otherwise protect defendant from Taylor. Thus, the trial court's finding was supported by the record evidence, and was not clearly erroneous.

Because defendant has not established that trial counsel's purported failure to investigate and call certain witnesses fell below an objective standard of reasonableness, defendant has not established that trial counsel was ineffective for failing to present these witnesses' testimonies concerning Taylor's aggressive character and prior acts of violence. However, assuming arguendo that defendant had established that trial counsel's purported failures fell below an objective standard of reasonableness, we conclude that defendant has not established a reasonable probability that a different outcome would have resulted but for these failures.

The trial court found that defendant was not prejudiced by trial counsel's failure to present the testimonies of Marion, Kemp, and Brian, concerning Taylor's character for aggression. The testimony established that defendant and Taylor fought frequently. Marion and Kemp both testified that Taylor had a character for aggression, and they saw Taylor instigate numerous physical fights with defendant, but never saw defendant instigate physical fights with Taylor.

Brian also testified that Taylor had a reputation for aggression. The trial court further found that Kemp's testimony, that Taylor pointed a rifle at defendant on numerous occasions, was not credible because Kemp did not call the police or file a police report after these incidents, and this Court defers to a trial court's credibility assessment with respect to testimony offered at an evidentiary hearing. *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003).

Defendant argues that Marion's, Kemp's, and Brian's testimonies would have provided support for the self-defense theory asserted at trial, that Taylor was the initial aggressor and defendant had an honest and reasonable belief that he had to use deadly force to prevent imminent death or great bodily harm to himself. Thus, defendant argues, had trial counsel presented this evidence, the jury would have been more likely to find that defendant acted in self-defense. This argument is unpersuasive. Under MCL 780.972(1)(a), a person who is not engaged in the commission of a crime may use deadly force against another person anywhere he or she has a legal right to be, if he or she "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself . . . ." However, a defendant cannot avail himself or herself of a self-defense justification when he or she uses excessive force or when he or she is the initial aggressor. *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013). The initial aggressor is the first person to use deadly force against the other. *People v Riddle*, 467 Mich 116, 120 n 8; 649 NW2d 30 (2002).

Were this a case in which defendant and Taylor were the only witnesses to the homicide, we might conclude that there is a reasonable probability that, had trial counsel presented this evidence, a different outcome would have resulted. Stated differently, if there were no eyewitnesses to the homicide, evidence that Taylor had a character for aggression and had previously committed specific acts of violence toward defendant might have significant probative value with respect to defendant's self-defense claim. However, defendant and Taylor were not the only witnesses to the homicide. At trial, Flood testified that defendant repeatedly threatened to stab Taylor and Flood in the hours before the homicide, and again threatened to "slaughter [Taylor] . . . like a pig" immediately before the altercation that resulted in Taylor's death. Flood further testified that defendant instigated the physical altercation by punching Taylor in the chest, Taylor punched defendant in the chest in response, and the two exchanged several more punches before Taylor called out, "[he's] stabbing me." The testimonies of Marion, Kemp, and Brian do not challenge Flood's version of events. That Taylor had a character for aggression and had previously committed acts of violence does not contradict or otherwise impeach Flood's testimony that, on this particular occasion, defendant repeatedly threatened to stab Taylor before the homicide, instigated the physical altercation, and used deadly force without adequate justification. Accordingly, defendant has not established a reasonable probability that, but for trial counsel's failure to present these witnesses' testimonies, a different outcome would have resulted.

Defendant next argues that trial counsel was ineffective for failing to present statements defendant made to his brother Brian after the homicide that were admissible under MRE 803(1)-(3) and would have supported that defendant acted in self-defense. The prosecution argues that the statements were inadmissible, and trial counsel's decision not to present the evidence was a reasonable strategic decision. Though decisions regarding what evidence to present are presumed to be matters of trial strategy, *Horn*, 279 Mich App at 39, trial counsel can be ineffective for failing to present evidence, *People v Shaw*, 315 Mich App 668, 681; 892 NW2d 15 (2016). However, to establish that trial counsel's failure to present evidence fell below an objective standard of

reasonableness, a defendant must establish that the evidence was admissible. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) ("Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion."). Resolution of this ineffective assistance claim first requires a determination as to whether defendant's statements to Brian were admissible.

"In general, hearsay—an out-of-court statement offered to prove the truth of the matter asserted—may not be admitted into evidence." *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015), citing MRE 801 and MRE 802.[3] Hearsay may be admissible when an applicable exception applies. *Shaw*, 315 Mich App at 673, citing MRE 802. At the *Ginther* hearing, Brian testified that he spoke with defendant on the phone twice on the date of the homicide. There was nothing unusual about the first conversation earlier in the day; however, when they spoke later that evening, defendant sounded scared and Brian could "tell something happened." Defendant told Brian that he and Taylor got into a fight, Taylor grabbed a knife from the kitchen, defendant and Taylor fought over it, and Taylor got hurt. Brian assumed that this conversation happened right after the altercation because defendant sounded scared and said that he had just left the house he shared with Taylor. Defendant argues that these statements were admissible under MRE 803(1)-(3).[4] At the time of defendant's trial, MRE 803 set forth the following exceptions to the preclusion against hearsay:

(1) Present Sense Impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excited caused by the event or condition.

(3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will. [Former MRE 803(1)-(3).]

Defendant's statement to Brian that Taylor grabbed a knife from the kitchen was admissible as a present sense impression under MRE 803(1). To admit a hearsay statement under this rule, three requirements must be met: "(1) the statement must provide an explanation or description of

---

[3] Our Supreme Court adopted amendments to MRE 801 and MRE 802, effective January 1, 2024, Administrative Order No. 2021-10, 512 Mich cxvi, cxviii (2023), and April 11, 2024, Administrative Order No. 2023-11, ___ Mich ___, ___ (2024). Citations and references to MRE 801 and MRE 802 in this opinion refer to the versions in effect at the time of defendant's trial.

[4] Our Supreme Court also adopted numerous amendments to MRE 803 since defendant's trial. Administrative Order No. 2021-10, 512 Mich cxviii (2023), effective January 1, 2024; Administrative Order No. 2023-11, ___ Mich ___ (2024), effective April 11, 2024. Citations and references to MRE 803 in this opinion refer to the version in effect at the time of defendant's trial.

the perceived event, (2) the declarant must have personally perceived the event, and (3) the explanation or description must have been made at a time substantially contemporaneous with the event." *People v Chelmicki*, 305 Mich App 58, 63; 850 NW2d 612 (2014) (quotation marks and citation omitted). Defendant's statement that Taylor grabbed a knife from the kitchen satisfies the first and second requirements because defendant personally perceived and described the event. Further, Brian testified that defendant stated he had just left the house he shared with Taylor at the time of the phone call; thus, defendant established that the statement was made at a time substantially contemporaneous with the event. Accordingly, defendant has established that defendant's statement, that Taylor grabbed a knife from the kitchen, was admissible under MRE 803(1). The statement was also admissible under MRE 803(2) as an excited utterance. Two requirements must be met to admit a statement under this rule: "1) that there be a startling event, and 2) that the resulting statement be made while under the excitement caused by the event." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). Certainly, the altercation at issue constitutes a startling event. And because Brian testified that defendant sounded scared and had just left the home he shared with Taylor, defendant established that the statement concerned a startling event and was made while under the excited caused by the event.

Notwithstanding that defendant's statements to Brian were admissible, defendant has not established that trial counsel's failure to present these statements fell below an objective standard of reasonableness. Trial counsel testified at the *Ginther* hearing that he was aware defendant spoke with Brian on the phone after the murder. Trial counsel believed defendant's statements to Brian would "not have played well to the jury" because defendant used vulgar phrases in describing the victim. Trial counsel again reasoned that juries tend to distrust the testimony of family members. Further, trial counsel believed it would be redundant to introduce defendant's statements to Brian during the phone call because the statements merely established that defendant and Taylor had been fighting and it escalated, which was established through Ms. Flood's testimony and other evidence. Trial counsel explained that "[w]e already had the information in and all it would have done was put the family members in a position of cross-examination which could have put them in a position where it made him look worse."

Thus, trial counsel provided a reasonable explanation for his strategic decision not to call Brian as a witness, "and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Defendant offers no other manner by which this evidence could have been presented except through Brian's testimony. Defendant, therefore, has not established that trial counsel's decision not to present defendant's statements after the homicide fell below an objective standard of reasonableness. Nor has defendant established a reasonable probability that the outcome at trial would have been different had trial counsel presented defendant's statements to Brian. Flood testified that defendant threatened to stab Taylor numerous times in the hours before the homicide. She further testified that defendant stabbed Taylor after defendant punched Taylor in the chest and the two began to fight. Flood did not testify that Taylor, at any time, grabbed a knife from the kitchen or had a knife on his person, nor were any knives recovered from Taylor's person or the home. The only knife that police recovered was the one found near defendant when they apprehended him. In light of this evidence, defendant has not established that, if counsel had presented defendant's statement to Brian that Taylor grabbed a knife from the kitchen, there is a

reasonable probability that the outcome at trial would have been different. Defendant has not established that trial counsel was ineffective on this basis.

Defendant next argues that the cumulative effect of trial counsel's errors deprived him of his right to a fair trial. We disagree. "[T]he cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). However, "[i]n making this determination, only actual errors are aggregated to determine their cumulative effect." *Id.* at 591 n 12 (citation omitted). Defendant has not established that trial counsel's failure to present evidence of Taylor's aggressive character and prior acts of violence, nor trial counsel's failure to present defendant's statements to Brian, fell below an objective standard of reasonableness. Accordingly, defendant has not demonstrated any actual errors on trial counsel's behalf that could be aggregated for the purpose of determining whether the cumulative effect of the errors deprived defendant of his right to a fair trial. Defendant, therefore, has not established that the cumulative effect of trial counsel's purported errors deprived him of his right to a fair trial.

## III. DIMINISHED CAPACITY DEFENSE

Defendant finally argues that our Supreme Court's holding in *People v Carpenter*, 464 Mich 223; 627 NW2d 276 (2001), precluding a defendant from asserting a diminished capacity defense, infringed upon his due-process right to present a defense. We disagree.

Defendant did not argue that he had a due-process right to assert a diminished capacity defense until he filed his motion for a new trial, so this issue is unpreserved. *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). This Court reviews unpreserved claims of constitutional error for plain error affecting substantial rights. *Id.* To establish entitlement to relief under the plain-error rule, a defendant must establish that "(1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *Id.* (quotation marks and citation omitted). When a defendant satisfies the three prongs of the plain-error rule, this Court must determine "whether the plain error affected the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence." *Id.* at 280.

"Under the state and federal Constitutions, a criminal defendant has a right to present a defense." *People v Leffew*, 508 Mich 625, 643; 975 NW2d 896 (2022), citing Const 1963, art 1, § 13; US Const, Ams VI and XIV. The affirmative defense of legal insanity is governed by MCL 768.21a, which provides that an individual is legally insane if the individual lacks "substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or conform his or her conduct to the requirements of the law." *Carpenter*, 464 Mich at 230-231, quoting MCL 768.21a(1).[5] The defense of diminished capacity "allows a defendant, even though legally sane, to offer evidence of some mental abnormality to negate the specific intent required

---

[5] MCL 768.21a was amended after our Supreme Court's decision in *Carpenter* through the adoption of 2014 PA 76, effective March 28, 2014. Citations and references to MCL 768.21a in this opinion refer to the version in effect at the time of defendant's trial.

to commit a particular crime." *Carpenter*, 464 Mich at 232. Before *Carpenter*, our Supreme Court had "several times acknowledged in passing the concept of the diminished capacity defense," but "never specifically authorized its use in Michigan courts." *Id*. at 232-233. The *Carpenter* Court, however, held that a defendant cannot assert a diminished capacity defense because

> [t]he Legislature has enacted a comprehensive statutory scheme setting forth the requirements for and the effects of asserting a defense based on either mental illness or mental retardation. We conclude that, in so doing, the Legislature has signified its intent not to allow evidence of a defendant's lack of mental capacity short of legal insanity to avoid or reduce criminal responsibility by negating specific intent. Rather, the insanity defense as established by the Legislature is the sole standard for determining criminal responsibility as it relates to mental illness…. [*Id*. at 241.]

Further, the *Carpenter* Court held that precluding a diminished capacity defense does not violate a defendant's due-process rights because "[a] state is not constitutionally compelled to recognize the doctrine of diminished capacity." *Id*. (citation omitted).

Defendant's diminished capacity argument is without merit. Though defendant contends that *Carpenter*'s preclusion of the diminished capacity defense infringes upon his due-process right to present a defense, the *Carpenter* Court rejected this assertion, holding that its preclusion of the diminished capacity defense does not violate a defendant's due-process rights. *Id*. Defendant offers no authority to contravene this holding, nor does defendant present any authority to support his assertion that this Court may decline to follow binding Supreme Court precedent. To the contrary, this Court is "bound to follow decisions of the Supreme Court unless those decisions have clearly been overruled or superseded." *People v Robar*, 321 Mich App 106, 117; 910 NW2d 328 (2017). Accordingly, *Carpenter* is binding precedent on this Court, and this Court does not have the authority to overrule or reject that precedent. *Paige v Sterling Hts*, 476 Mich 495, 524; 720 NW2d 219 (2006). As such, defendant has not established that his inability to present a diminished capacity defense amounted to plain error effecting his substantial rights.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ James Robert Redford